[Crim. No. 21910. First Dist., Div. Four. Jan 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
HUGO HECTOR ROUSSEAU, Defendant and Appellant.

**COUNSEL**

Michael A. Mendelson, Exelrod & Mendelson, Michael L. Marowitz and Bonjour, Gough, Stone & Remer for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHRISTIAN, J.**—Hector Rousseau appeals from a judgment of imprisonment after a jury found him guilty of conspiracy to commit theft (Pen. Code, § 182, subd. 4), two counts of grand theft (Pen. Code, §§ 484, 487) and one count of failure to remit employment taxes (Rev. & Tax. Code, § 19408).

During the middle and late 1970s, appellant owned, managed or was otherwise involved with many companies which provided air conditioning and refrigeration repair services. Telephone service was subscribed for separately for each entity, but all lines were connected to a central location in appellant's home. Appellant's strategy was to blanket the area with telephone directory advertising by placing in the yellow pages of several directories announcements concerning his diversely named entities. Charges for monthly telephone service and for advertising were frequently not paid and the accounts became delinquent. The telephone company (PT&T) billed each entity separately, being unaware of the connection between them; the monthly service and advertising charges were itemized on each bill. By early 1977, the total delinquent charges for telephone services for which appellant was responsible had reached $35,000. The situation was eventually discovered by PT&T, and credit was cut off from appellant and all of his service companies.

Appellant caused a company called Serv-All-Tech, Inc. to be incorporated to take over several of the refrigeration repair businesses. Articles of incorporation were filed listing the coconspirator, Mark Sheppard, as sole owner. In addition, a notice of issuance of securities was filed stating that shares of stock "have been or are proposed to be issued" to appellant, among others. Appellant effectively controlled Serv-All-Tech, Inc. after its incorporation; he continued to hire and supervise personnel, handle certain financial transactions and control the daily operations of the business.

Late in 1977, several additional phone services, accompanied by directory advertising, were obtained by appellant's entities under the name of Serv-All-Tech, Inc.; Mark Sheppard was designated as the responsible person.

At about this time, several accounts which had been listed under appellant's name were transferred to Sheppard and Serv-All-Tech, Inc. By the time this prosecution was commenced, Serv-All-Tech, Inc. and other entities controlled by appellant had built up post-1977 delinquencies of about $40,000 for telephone service and directory advertising.

In one of appellant's manipulations he accompanied several employees to Budget Rent-A-Car to obtain cars for use on their service calls. A car would be rented in the name of the repairman rather than in the name of appellant or one of his companies. But a notation would normally be made on the rental agreement that the company should be billed. Several repairmen testified that they assumed or were told by appellant that the company would pay for the rental cars; the individual repairmen were only to sign the agreements "for insurance purposes."

Appellant argues that there was insufficient evidence to support a conviction on any of the four counts. ■ Whenever the sufficiency of evidence is challenged on appeal, the appellate court must review the record in the light most favorable to the judgment and determine whether the evidence would justify a reasonable trier of fact in finding the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738].) The appellate court must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. (*Id.*, at p. 576.) "[I]t is not the function of the reviewing court to reweigh the evidence." (*People* v. *La Fontaine* (1978) 79 Cal.App.3d 176, 186 [144 Cal.Rptr. 729].)

■ The conspiracy and theft verdicts are well supported by circumstantial evidence that after appellant's original scheme was detected by PT&T, appellant collaborated with Mark Sheppard in creating a new structure of enterprises one purpose of which was to exploit telephone service and yellow-page advertising without paying for either. By using only Mark Sheppard's name on new applications for services, the conspirators were able to get additional credit extensions although PT&T had determined not to extend further credit to appellant or his companies. This evidence supports a finding that appellant misled PT&T into

providing telephone service and directory advertising to Serv-All-Tech, Inc. based on his false representations to PT&T.

■ Appellant challenges the sufficiency of the evidence to support his conviction of theft by false pretenses in connection with his transactions with Budget Rent-A-Car. Appellant ignores evidence that he arranged a series of rentals from Budget authorizing rental charges to be billed to appellant's company and providing purchase order numbers for these rentals. Payment of charges was evaded by appellant. This evidence supports a finding that appellant had misled Budget Rent-A-Car into renting vehicles to his employees in the belief that his company would be responsible.

■ Appellant next contends that there is insufficient evidence to support his conviction for wilful failure to pay over employment taxes. Wilful failure to pay over employment taxes is a felony. (Rev. & Tax. Code, § 19408.) ■ Where, as here, a corporation is under the control of a person who commits a criminal act while using the corporate name, it is appropriate to ignore the corporate entity and hold the person individually responsible. (*People* v. *Jones* (1943) 61 Cal.App.2d 608, 624 [143 Cal.Rptr. 726].)

■ Appellant had substantial control over Serv-All-Tech, Inc. during 1977. Appellant managed the daily operations of the business, including the hiring of employees and the control of financial matters. Employees of Serv-All-Tech, Inc. were frequently paid with money orders drawn on appellant's personal bank accounts into which Serv-All-Tech, Inc. revenue had been deposited. This was often done where the original Serv-All-Tech, Inc. paychecks, signed by coconspirator Mark Sheppard, had been returned for insufficient funds. Employees testified that taxes were withheld from their paychecks in the form of deductions. During 1977, taxes owed by Serv-All-Tech, Inc. for its employees were not paid to the state. Also, some of the returns did not name all the employees who were working for Serv-All-Tech, Inc. during the period covered by the returns. This evidence well supports appellant's conviction of violation of Revenue and Taxation Code section 19408.

■ Appellant contends that he was improperly charged and convicted under the general theft statute (Pen. Code, § 484) whereas he should have been charged under the special statute covering telephone fraud (Pen. Code, § 502.7). Appellant was charged with and found

guilty of violating Penal Code section 484: "Every person ... who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property ... is guilty of theft." The special statute to which appellant refers provides in part that: "A person who, knowingly, wilfully and with intent to defraud a person providing telephone or telegraph service, avoids or attempts to avoid, or aids, abets, or causes another to avoid the lawful charge, in whole or in part, for telephone or telegraph service by any of the following means is guilty of a misdemeanor: .... (5) By using any other deception, false pretense, trick, scheme, device or means." (Pen. Code, § 502.7.)

■ Prosecution under a general statute is precluded by a special statute when the general statute covers the same matter as, and thus conflicts with, the special statute. (*People v. Jenkins* (1980) 28 Cal.3d 494, 501 [170 Cal.Rptr. 1, 620 P.2d 587]; *People v. Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]; see *People v. Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593].)

Applying this rule, the court in *Ruster* held that unemployment insurance fraud could not be prosecuted under Penal Code section 484 because of the existence of section 2101 of the Unemployment Insurance Code.[1] The court interpreted section 2101 as a "special" statute which precluded prosecution under Penal Code section 484 for acts committed in violation of section 2101. (*People v. Ruster, supra*, 16 Cal.3d 690, 695-697.)

The doctrine which prohibits prosecution under a general statute where a special statute includes the same matter is "designed to ascertain and carry out legislative intent." (*People v. Jenkins, supra*, 28 Cal.3d 494, 505.) In determining this legislative intent, "[t]he fact that the Legislature has enacted a specific statute covering much the same ground as a more general law is a powerful indication that the Legislature intended the specific provision alone to apply. Indeed, in most instances, an overlap of provisions is determinative of the issue of legislative intent and 'requires us to give effect to the special provision alone

---

[1]Section 2101 of the Unemployment Insurance Code provides in part: "It is a misdemeanor to willfully make a false statement or representation or knowingly fail to disclose a material fact to obtain ... any benefit or payment ...."

in the face of the dual applicability of the general provision . . . and the special provision . . . .'" (*Id.*, at pp. 505-506.)

This general rule does not apply where there are "overwhelming indications of a contrary legislative intent." (*Id.*, at p. 506.) In the absence of such indications, the rule is that "where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute . . . ." (*In re Williamson, supra*, 43 Cal.2d 651, 654; cited in *People* v. *Gilbert* (1969) 1 Cal.3d 475, 479 [82 Cal.Rptr. 724, 462 P.2d 580].)

█  The present case involves defrauding the telephone company as to both monthly service and classified advertising in the directory. Respondent contends that the term "telephone service" as it is used in the special statute (Pen. Code, § 502.7) does not include directory advertising and that appellant was therefore properly charged under the general theft statute (Pen. Code, § 484). Classified advertising in the telephone directory is a service provided by the telephone company for the benefit of its business customers seeking to advertise the availability of their goods and services, and for the benefit of its other customers seeking these goods and services. The yellow pages directory is published for use in conjunction with telephone service by providing the necessary phone numbers to utilize that service. But it is essentially an advertising service rather than telephone service.

The general tenor of Penal Code section 502.7 suggests that the Legislature did not intend to include directory advertising within the special provisions governing telephone fraud. The statute deals with particular techniques of defrauding the phone company with respect to avoidance of toll charges, such as fraudulently charging calls to nonexistent phone numbers or credit cards (Pen. Code, § 502.7, subd. (a)(1)) or tampering with the mechanical functioning of telephone equipment (Pen. Code, § 502.7, subd. (a)(4)). A fair reading of the statute indicates that it was meant to cover use of the telephone, not yellow pages advertising. The inclusion in the special statute of a provision prohibiting persons from defrauding the telephone company "[b]y using any other deception, false pretense, trick, scheme, device or means" (Pen. Code, § 502.7, subd. (a)(5)) appears to be related to the special purpose of the statute; it does not show an intention to broaden the definition of telephone service.

The prosecution did present evidence as to fraud relating to both directory advertising and monthly service charges. The evidence of service charge fraud was not relevant to a prosecution under the general theft statute, but there was no objection at trial on that basis. The verdict under the general theft statute is well supported by the evidence of fraud with respect to advertising charges. Therefore, the verdict and judgment must be sustained.

█ Appellant contends that the prosecutor systematically excluded blacks from the jury, thereby violating appellant's right to trial by jury. (Cal. Const., art. I, § 16.) █ A prosecutor's use of peremptory challenges is presumed to be constitutionally permissible. This presumption may be rebutted if the defendant establishes a prima facie case that the prosecutor has challenged jurors on the basis of group bias alone. (*People* v. *Wheeler* (1978) 22 Cal.3d 258, 278, 280 [148 Cal.Rptr. 890, 583 P.2d 748].) To advance a claim of discriminatory exclusion, the defendant must establish "as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group .... Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias." (*Id.*, at p. 280.)

The defendant may demonstrate systematic exclusion by showing that: (1) the prosecutor has excluded all or most of an identified group from the venire; (2) he has used a disproportionate number of peremptory challenges against members of this group; or (3) the jurors in question have only their group identification in common; or (4) apart from their group identification they are as heterogeneous as the community as a whole. (*People* v. *Wheeler, supra*, 22 Cal.3d at p. 280.) If the defendant makes a prima facie case, the burden shifts to the prosecution to show that the peremptory challenges were not predicated on group bias alone. (*Id.*, at p. 281.)

█ The prosecution in the present case exercised two peremptory challenges against black jurors. The trial court took judicial notice that these jurors were the only blacks on the panel. However, appellant's attempt to satisfy the required prima facie case was limited to his statement that "there were only two blacks on the whole panel, and they were both challenged by the district attorney." That statement was not a prima facie showing of systematic exclusion. Thus, the trial

court's determination that the defense failed to meet its burden is to be sustained on appeal.

■ Appellant contends that he was denied equal protection in that he was sentenced to two years in state prison whereas his separately tried coconspirator (Mark Sheppard) received only a suspended sentence and probation.

"The question of sentencing is a matter within the exclusive jurisdiction of the trial court so long as it imposes a penalty within limits authorized by statute. (*People* v. *Schafer* (1911) 161 Cal. 573, 580 ....)" (*People* v. *Smith* (1972) 26 Cal.App.3d 404, 410 [102 Cal.Rptr. 625].) The penalty here imposed satisfied statutory sentencing requirements. (Pen. Code, § 18.)

"A defendant has no constitutional equal protection right to a lighter penalty merely because another defendant, convicted of a different offense, albeit one arising out of the same incident, receives a lighter penalty from a different sentencing judge. (Cf. *People* v. *Smith*, 259 Cal.App.2d 868, 872-873 ....)" (*People* v. *Smith, supra*, 26 Cal.App. 3d 404, 410.)

The equal protection claim is unfounded.

The judgment is affirmed.

Caldecott, P. J., and Poché, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 24, 1982.