[No. B011805. Second Dist., Div. Seven. Dec. 23, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD ANTHONY MOSS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of part II.

## Counsel

Michael K. Totaro, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**THOMPSON, J.**—Defendant Richard Moss appeals from the judgment entered after his conviction by jury of rape (Pen. Code, § 261, subd. (2)) and burglary (Pen. Code, § 459) with use of a deadly weapon (Pen. Code, § 12022.3, subd. (a); § 12022, subd. (b)) and his admission of three prior felony convictions (Pen. Code, §§ 667.5, subds. (a), (b); 667.6, subd. (a)). Defendant, who is Black, was convicted of breaking into the apartment of K.S., who is White, and forcibly raping her on March 17, 1982.

Defendant contends that his constitutional right to an impartial jury drawn from a representative cross-section of the community was violated by the prosecutor's misuse of peremptory challenges to systematically exclude the only two Blacks in the venire from the jury.[1] ▮ Under the circumstances of this case, we hold that defendant established a prima facie

---

[1]In the unpublished part of this opinion, we reject defendant's further contention that the trial court failed to exercise its discretion in imposing a five-year enhancement for a prior rape conviction.

case of group discrimination by the prosecutor's peremptory challenges of the only two Black jurors. We further hold that the prosecution met its burden to rebut the inference of group bias. Accordingly, we will affirm the judgment.

DISCUSSION

I

*Propriety of Peremptory Challenges*

A. *Procedural Background*

There were only two Blacks in the jury venire—Mr. Warren Reed and Mrs. Jamsetta McGee—and the prosecutor exercised two of its first six peremptory challenges to exclude them from the jury.[2]

After the prosecutor had peremptorily excluded both Blacks, the defense made a *Wheeler* (*People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]) motion for a mistrial, pointing out that the prosecutor had excused the only Black man and the only Black woman out of the 35 members of the jury panel, leaving the defendant as the only Black in the courtroom. Defense counsel asked that the prosecutor be required to make a showing of his reasons. The court noted "for the record" that the prosecutor had excused "all of the black jurors in this case." Following discussion of the governing cases, the court initially ruled that the defense had established a prima facie case and called upon the prosecutor to state his reasons for challenging both Blacks.[3] After hearing the prosecutor's explanations, the court denied the *Wheeler* motion.[4]

---

[2]The prosecutor actually exercised seven peremptory challenges in all. Reed was the fourth challenged and McGee was the sixth. In order of challenge, the others were: Mrs. Hurley (#1), Mr. Fuginami (#2), Mr. Barbe (#3), and Mr. Gilmore (#5). After the only two Black prospective jurors were excused and the court had denied the *Wheeler* motion, the prosecutor peremptorily challenged one more person, Mr. Potlerana.

[3]The court stated: "To cut it short, I think that [the defense] has made out a prima facie case. You have excluded the only two black people in the whole courtroom. [¶] . . . . Let me just say that I have concluded that to cut it short. [¶] So why don't you state your reasons for why you have excluded those two people." This was an express ruling that gave the prosecutor notice that he was required to justify his peremptory challenges. (See *People* v. *Turner* (1986) 42 Cal.3d 711, 719, fn. 3 and conc. opn. at p. 729 [230 Cal.Rptr. 656, 726 P.2d 102].) Indeed, even without the explicit statement herein of a prima facie case, a trial court's inquiry into the prosecutor's reasons implies a finding of group discrimination and shifts the burden of justification to the prosecutor. (*Id.*, at p. 719.)

[4]Subsequently, after denying the *Wheeler* motion, the court apparently changed its mind about the existence of a prima facie case since it later stated its "findings for the record" that defendant had not sustained his burden to establish a prima facie case. Regardless of the court's belated statement, we have no doubt that defendant made the required prima facie case of group discrimination as the court originally found.

## B. *Governing Principles and Procedural Requirements*

In *People* v. *Wheeler, supra,* 22 Cal.3d 258, our California Supreme Court recognized the danger that peremptory challenges could be used to undermine constitutional rights. ■ The *Wheeler* court concluded that "the use of peremptory challenges to remove prospective jurors on the sole ground of group bias violates the right to trial by a jury drawn from a representative cross-section of the community under article I, section 16, of the California Constitution." (*Id.,* at pp. 276-277.)[5] In a series of subsequent decisions, our Supreme Court has repeatedly "made it clear that the courts of this state cannot tolerate [such] abuse of peremptory challenges . . . ." (*People* v. *Turner, supra,* 42 Cal.3d at pp. 715-716, and cases cited therein.) Moreover, this "same pernicious practice" (*id.,* at p. 716) has also recently been condemned by the United States Supreme Court as a violation of the right to equal Protection of the laws under the Fourteenth Amendment to the federal Constitution. (*Batson* v. *Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712].)

■ There is a rebuttable presumption that a party exercising a peremptory challenge is doing so on a constitutionally permissible ground—that is, on grounds of specific bias. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 278.) "[P]eremptory challenges are a historic right, provided 'to insure that criminal trials are conducted before jurors who not only proclaim their impartiality, but whose ability to be evenhanded is not seriously questioned by *the parties. . . .*' " (*People* v. *Turner* (1984) 37 Cal.3d 302, 314 [208 Cal. Rptr. 196, 690 P.2d 669].) " [T]he law recognizes that a peremptory challenge may be predicated on a broad spectrum of evidence suggestive of juror partiality" which "may range from the obviously serious to the apparently trivial, from the virtually certain to the highly speculative." (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 275.) Peremptory challenges allow for the removal of a biased juror where "the party either cannot establish his reason by normal methods of proof or cannot do so without causing embarrassment . . . and resentment among the remaining jurors. [Fn. omitted.]" (*Ibid.*) Thus, "[a] prosecutor may act freely on the basis of 'hunches,' unless

---

[5]"Group bias" is the presumption "that certain jurors are biased merely because they are members of an identifiable group distinguished on racial, religious, ethnic, or similar grounds . . . ." (*Wheeler, id.,* at p. 276.) It is to be contrasted with "specific bias" which has been defined as "a bias relating to the particular case on trial or the parties or witnesses thereto." (*Ibid.*).

Of course, "[t]he representative cross-section rule does not guarantee a jury which includes members of a defendant's group or that 'mirror[s] the demographic composition' of the community. [Citation.] It simply assures the right 'to a petit jury that is as near an approximation of the ideal cross-section of the community as the process of random draw permits.' " (*People* v. *Trevino* (1985) 39 Cal.3d 667, 682, fn. 9 [217 Cal.Rptr. 652, 704 P.2d 719]; *People* v. *Wheeler, supra,* 22 Cal.3d at p. 277.)

and until these acts create a prima facie case of group bias, and even then he may rebut the inference." (*People* v. *Hall* (1983) 35 Cal.3d 161, 170 [197 Cal.Rptr. 71, 672 P.2d 854].)

In *Wheeler,* the California Supreme Court established the following procedure as a remedy for the misuse of peremptory challenges: "If a party believes his opponent is using his peremptory challenges to strike jurors on the ground of group bias alone, he must raise the point in timely fashion and make a prima facie case of such discrimination to the satisfaction of the court. First . . . he should make as complete a record of the circumstances as is feasible. Second, he must establish that the persons excluded are members of a cognizable group within the meaning of the representative cross section rule. Third, from all the circumstances of the case he must show a strong likelihood that such persons are being challenged because of their group association rather than because of any specific bias. [Fn. omitted.]" (22 Cal.3d at p. 280; see also *People* v. *Turner, supra,* 42 Cal.3d at pp. 717-718.)

Once the defense makes out a prima facie case, the burden shifts to the prosecution to rebut the inference of impermissible group bias. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 281; accord *People* v. *Motton* (1985) 39 Cal.3d 596, 600 [217 Cal.Rptr. 416, 704 P.2d 176]; *People* v. *Trevino, supra,* 39 Cal.3d at p. 688.) We rely "on the good judgment of the trial courts to distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of group discrimination." (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 282; *People* v. *Hall, supra,* 35 Cal.3d at p. 168.) But "we must do so in the 'specific bias' context envisaged by *Wheeler*" because "[o]nly then can we assure that a defendant is afforded the full complement of cross-sectional rights." (*People v. Trevino, supra,* 39 Cal.3d at p. 688, fn. 21.) Thus, "[i]n determining whether the prosecution has satisfied this burden, the court must not consider the proffered justifications in terms of the district attorney's ' "judgment" or "sincerity," ' but must determine whether the 'ground of challenge was a specific bias on the part of the individual juror.' " (*Id.,* at p. 688.)

In *Batson* v. *Kentucky, supra,* 476 U.S. at p. 96 [90 L.Ed.2d at p. 87] the United States Supreme Court recently adopted "essentially the same procedure." (*People* v. *Turner, supra,* 42 Cal.3d at p. 717.) The court held that in order to establish a prima facie case of purposeful discrimination in violation of the Fourteenth Amendment, "defendant first must show that he is a member of a cognizable racial group [citation] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact,

as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' [Citation.] Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." (*Batson* v. *Kentucky, supra,* 476 U. S. at p. 96 [90 L.Ed.2d at pp. 87-88].)

"Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. . . . The prosecutor . . . must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination." (*Id.,* at pp. 97-98 [90 L.Ed.2d at pp. 88-89], fns. 20 & 21 omitted.)

### C. *Defendant Established a Prima Facie Case*

The People contend that defendant failed to establish a prima facie case of discriminatory exclusion of Blacks from the jury. We disagree. Defendant herein clearly made the requisite showing of the first two elements. The record accurately demonstrates that the prosecutor used two of his peremptory challenges to strike the only prospective Black jurors so that none remained on the jury panel. Secondly, it is well settled that Blacks constitute a cognizable group. (*People* v. *Turner, supra,* 42 Cal.3d at p. 719; *People* v. *Trevino, supra,* 39 Cal.3d at p. 686; *People* v. *Motton, supra,* 39 Cal.3d at p. 605; *People* v. *Wheeler, supra,* 22 Cal.3d at p. 280, fn. 26.)

The crucial question herein involves the third element: taking all the circumstances of the case into consideration, did defendant show a strong likelihood that Mr. Reed and Mrs. McGee were being challenged because they were Black rather than because of any specific bias? "Whether race was, in fact, the exclusive basis need not be proved; *the objecting party need only make a prima facie showing . . . .*" (*Holley* v. *J & S Sweeping Co.* (1983) 143 Cal.App.3d 588, 593 [192 Cal.Rptr. 74].)

The *Wheeler* court, for the purpose of illustration, listed several methods by which a party might satisfy this final prong of a prima facie showing. For example: "[T]he party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a dispro-portionate number of his peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic— their membership in the group—and that in all other respects they are as heterogeneous as the community as a whole. Next, the showing may be supplemented when appropriate by such circumstances as the failure of his

opponent to engage these same jurors in more than desultory voir dire, or indeed to ask them any questions at all. Lastly, . . . the defendant need not be a member of the excluded group in order to complain of a violation of the representative cross-section rule; yet if he is, and especially if in addition his alleged victim is a member of the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention. [Fn. omitted.]" (*People* v. *Wheeler, supra,* 22 Cal.3d at pp. 280-281; see also *People* v. *Hall, supra,* 35 Cal.3d at p. 167; *People* v. *Trevino, supra,* 39 Cal.3d at p. 688, fn. 20.)

In the case herein, the prosecutor peremptorily struck the only two Black jurors in the entire venire. Moreover, in a case of alleged exclusion on the ground of race it may be significant if the persons challenged, although all Black, include both men and women and are of a variety of ages, occupations and social or economic condition. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 280, fn. 27; *People* v. *Fuller* (1982) 136 Cal.App.3d 403, 419 [186 Cal.Rptr. 283]; see also *People* v. *Turner, supra,* 42 Cal.3d at p. 719.) Here, the two challenged jurors shared few if any characteristics other than their race.[6] Although the prosecutor questioned Mrs. McGee extensively on voir dire, particularly with respect to her familiarity with the location, he asked no questions at all of Mr. Reed.[7]

Finally, not only was defendant a member of the excluded group of prospective jurors, but the alleged victim was a member of the group to which a majority of the jurors belonged. (*People* v. *Turner, supra,* 42 Cal.3d at p. 719; *People* v. *Motton, supra,* 39 Cal.3d at p. 607, fn. 3.) "[I]f a defendant is black, and the victim is white such facts would be especially *significant in the totality of circumstances* in establishing group bias. [Italics in original.]" (*People* v. *Fuller, supra,* 136 Cal.App.3d at p. 419.) "The prosecutor clearly possessed a motive to exclude black jurors in that the defendant was black while the victim[ ] [was] white." (*People* v. *Harvey* (1984) 163 Cal.App.3d 90, 110 [208 Cal.Rptr. 910].) These race factors are particularly significant in a mixed race rape case such as here when it is apparent that the defense would be misidentification and alibi. (*People* v. *Fuller, supra,* 136 Cal.App.3d at pp. 419-420.) Here, as in *Turner,* "[t]he combination of these factors establishes a prima facie case of group discrimination." (*People* v. *Turner, supra,* 42 Cal.3d at p. 719.)

---

[6]Mr. Reed was a Black male, married, with three children, the eldest of which was 18 years old, and had been employed as a salesman for about 13 years. Mrs. McGee was a Black, apparently elderly female, who had six adult children, the youngest being 26 years of age, and had been employed at County U.S.C. Medical Center as a data entry clerk for about 18 years.

[7]The prosecutor also peremptorily challenged three other males (Barbe, Gilmore, and Pollerana) without asking them any questions.

Nonetheless, the People, in effect, claim that a prima facie case cannot be established where, as here, there were only two Black jurors in the venire and the prosecutor challenged both. Not so. Prima facie cases have been found when seven peremptory challenges were used to remove all Blacks (*People v. Wheeler, supra,* 22 Cal.3d at p. 280); when all six Hispanics and one of two Hispanic alternates were peremptorily challenged (*People v. Trevino, supra,* 39 Cal.3d 667); when five of eight peremptories were used to remove all Black jurors (*People v. Hall, supra,* 35 Cal.3d at p. 169; *People v. Motton, supra,* 39 Cal.3d at p. 607); when seven of thirteen challenges eliminated all but one Black juror (*ibid.*); when four of ten challenges removed all Blacks (*People v. Clay* (1984) 153 Cal.App.3d 433, 456 [200 Cal.Rptr. 269]); when three of six challenges removed three out of four Black jurors (*Holley v. J & S Sweeping Co., supra,* 143 Cal.App.3d at p. 590); when three challenges were used to remove the only three available Black jurors (*People v. Fuller, supra,* 136 Cal.App.3d at p. 415); and when three of four Hispanics and one of the alternates were peremptorily challenged (*People v. Ortega* (1984) 156 Cal.App.3d 63 [202 Cal.Rptr. 657]).

Furthermore, the recent case of *People v. Turner, supra,* 42 Cal.3d 711, makes it clear that two peremptory challenges can make a prima facie case. In *Turner,* where the prosecution eventually peremptorily challenged three Black panelists, the California Supreme Court concluded that a prima facie case was established where "[a]s of the time of the [*Wheeler*] motion, the prosecutor had used *two* of his first five peremptory challenges to strike the only Black prospective jurors in the box." (*Id.,* at p. 719, italics added.)[8]

There is no arbitrary numerical cutoff so that if only one or two Black jurors are on the venire or survive challenges for cause, "the prosecutor need have no compunction about striking them from the jury because of their race." (*Batson v. Kentucky, supra,* 476 U.S. at p. 105 [90 L.Ed.2d at p. 93], Marshall, J. concurring.) We emphatically reject any automatic rule which would leave prosecutors "free to discriminate against blacks in jury selection provided that they hold that discrimination to an 'acceptable level [of one or two].' " (*Id.,* at p. 105 [90 L.Ed.2d at pp. 93-94].)

---

[8]The People's reliance on *People v. Rousseau* (1982) 129 Cal.App.3d 526, 536-537 [179 Cal.Rptr. 892], and *People v. Harvey, supra,* 163 Cal.App.3d 90, for the proposition that two peremptory challenges cannot make a prima facie case is misplaced. As the *Turner* court pointed out (42 Cal.3d at p. 719), *Rousseau* is distinguishable because there the defendant's attempt to make a prima facie case was limited to a statement that the only two Blacks on the panel were challenged. There were no other circumstances shown. Indeed, in *Rousseau,* where the defendant was charged with theft and a failure to remit unemployment taxes, the race of the defendant was not even shown. Moreover, in *Harvey,* although the court did not find a prima facie discrimination there, it recognized that "[i]n theory at least, even the exclusion of a single prospective juror may be the product of an improper group bias." (163 Cal.App.3d at p. 111.)

Accordingly, in view of the total circumstances herein (*People* v. *Turner, supra,* 42 Cal.3d at p. 719), and relying on the indisputable fact that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate' " (*Batson* v. *Kentucky, supra,* 476 U.S. at p. 96 [90 L.Ed.2d at p. 87]), we conclude that defendant sustained his burden to make a prima facie showing of impermissible exclusion.

### D. *The Prosecution Justifications Were Sufficient*

The trial court herein had required the prosecution to justify its exclusion of the two Black jurors and thereafter denied the *Wheeler* motion. We therefore now turn to an analysis of the proffered reasons to determine whether the prosecution satisfied its burden to rebut the inference of impermissible group bias.

■ The People argue that the prosecutor gave specific reasons for excluding both Reed and McGee but the prosecutor must show the exclusion was on grounds of a "specific bias," not just a "specific reason." (*People* v. *Trevino, supra,* 39 Cal.3d at pp. 689-690.) Moreover, disparate treatment of the members of the excluded group and the unchallenged jurors is indicative of group bias (*id.,* at p. 690) and can in itself warrant the conclusion that the prosecutor exercised peremptories for impermissible reasons (*People* v. *Hall, supra,* 35 Cal.3d at p. 168). A prosecutor may sustain his burden by showing that he peremptorily challenged similarly situated members of the majority group on identical or comparable grounds. (*People* v. *Wheeler, supra,* 22 Cal.3d at p. 282.) However, "[s]uch a comparison must be presented to the trial court at the time the prosecution attempts to justify the challenges made to members of the cognizable class. [Fn. omitted.]" (*People* v. *Trevino, supra,* 39 Cal.3d at p. 692.) "It is the prosecution's responsibility to bring these circumstances to the trial court's attention. It is neither the function nor the duty of the trial courts, or the appellate courts on review, to speculate as to prosecutorial motivation for other peremptory challenges." (*Id.,* at p. 692, fn. 26.)

The prosecutor offered the following reasons for excusing Mr. Reed: "I noted his demeanor and the way he looked at me during jury selection. He had a rather unpleasant look and his face toward me made me feel very uncomfortable with him. [¶] He was wearing dark glasses yesterday, wore a gold chain, velour shirt, Levi's with running shoes. [¶] His manner in responding to the questions I found were—I felt very uncomfortable with. He was reading a newspaper in the jury box. [¶] More importantly, he was

standing alone at the end of the hall when I would look at him, away from all prospective jurors and kind of being the loner of the bunch. [¶] All of these factors I felt—his appearance, the mannerisms that he had at the time there with his arms folded in front of each other, he appeared to be a very closed person, one that would either result in a hung jury or be unreceptive to the evidence. [¶] I would have challenged him would he have been Caucasian, oriental or any other ethnic group because of his overt actions. [¶] Those are my specific reasons, specific bias, and those are the reasonings for the specific bias."

 The prosecutor's explanations for challenging Mr. Reed were predominantly based on his appearance, demeanor and overt actions in court. In *Wheeler,* our Supreme Court said that a prospective juror may permissibly be excluded, for example, if the prosecutor fears bias because "his clothes or hair length suggest an unconventional lifestyle" or "mistrust[s] . . . a juror's objectivity on no more than the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another.' " (22 Cal.3d at p. 275; accord *People* v. *Turner, supra,* 37 Cal.3d at pp. 314-315.) We recognize that, more recently, in *People v. Trevino,* the court rejected a prosecutor's "reason" for exclusion based solely on the prospective juror's "body language and mode of answering certain questions" as "particularly untenable in light of *Wheeler's* requirement of a showing of specific bias. [Fn. omitted.]" (39 Cal.3d at p. 692.) The court noted that "[t]o suggest . . . that either body language . . . or a conclusory notion that a juror might not form his own opinion . . . rises to the level of specific bias in the *Wheeler* context, is to reduce the constitutional guarantee to meaningless superficialities." (*People* v. *Trevino, supra,* 39 Cal.3d at p. 692, fn. 25.) Nonetheless, the prosecution showing need not rise to the level of the challenge for cause. (*People* v. *Hall, supra,* 35 Cal.3d at p. 167.)

Here, the trial court could validly determine that the prosecutor had sustained his burden to justify his peremptory challenge of Mr. Reed. The prosecutor's subjective impressions based on body language, demeanor and apparel were buttressed by reference to objectively observable overt actions by the prospective juror. Although neither the prosecutor's conclusory assumption from seeing Mr. Reed folding his arms (see *People* v. *Trevino, supra,* 39 Cal.3d at p. 690, fn. 22), nor the juror's "rather unpleasant look" (cf. *People* v. *Hall, supra,* 35 Cal.3d at pp. 171-172, Bird, C. J., concurring) nor his clothing would suffice in and of itself to indicate "specific bias," the prosecutor also articulated his reliance on the facts that Mr. Reed was standing apart from the other jurors in the hall and was reading the newspaper in the jury box. The prosecutor, and the court, could reasonably infer from the latter action in the jury box, especially when combined with Reed's

facial expressions, a disdain for the proceedings, if not out right antagonism to the prosecutor and the court.[9]

We next turn to the prosecutor's proffered reasons for challenging Mrs. McGee. The prosecutor gave the following explanation: "I have been trying cases for 15 years and been trying jury trials for that long, too. I have been selecting—been through—tried hundreds of jury trials. [¶] I found county employees with service such as 18 years in a position such as Mrs. McGee said she had are set—do not—there's a high substantial risk of them not being satisfactory jurors. [¶] Now, this is whether they are Black or they are White. This has nothing to do with color whatsoever. In the capacity in which she worked, my primary—one of the primary things I make decisions on is occupations, so her occupation, I felt, was not inducive to the type of case that we're trying here, the type of juror I'm looking for specifically. [¶] She lives in an area that's close to where the defendant lives right now. He lives with Paulette Hooker on Bellaire, which is close to approximately where Mrs. McGee lived. [¶] Mrs. McGee has sons which are the approximate age of the defendant in this case. I believe that she would identify with those sons in deciding—there's a change [sic], a risk that she would do so. [¶] I feel that she grew up in the area. She knows the area too familiarly. I think in this situation I would rather have jurors that were totally, totally unfamiliar with that specific area. [¶] She says she drives up Los Robles past that location on numerous times, and there's such a thing as being too close. [¶] But primarily, with respect to her, it was on the basis—my specific reason for challenging her was her occupation, her age. She is an elderly lady. As the court noted, I have been excusing elderly jurors, a number of them, throughout the course of this trial. [¶] And my excusal of her, again, was not based upon race at all. It was based upon occupation and the other factors that I have outlined to the court. [¶] And there were also matters in which she answered the court's questions, the court's questionnaire, which I was looking at, her various—the way she did that. [¶] Again, not based upon race, but based upon the manner in which she did that made me feel uncomfortable with her. [¶] Now, the fact that those are the only two [Blacks] in the panel, I wish there were more Black jurors in the panel but there weren't. That's not my fault. I have to do—to competently select the jury in the manner I feel is best. I would welcome more Black jurors on the panel, but that would be the subject matter of another motion, not a Wheeler motion in this case."

The articulated reasons for excusing Mrs. McGee generally appear on their face to be legitimately based upon specific bias. Moreover, at least

[9]There is no issue of disparate treatment between Mr. Reed and other unchallenged jurors. If any other jurors had been reading a newspaper, presumably the defense counsel or the court would have so indicated.

some of them withstand analysis for disparate treatment between unchallenged jurors and her. The prosecutor stressed that his primary rationale for excluding her was "her occupation" and "her age." The prosecutor's expressed dissatisfaction with county clerical employees with about 18 years service was not inconsistent with his acceptance of Ms. Velasquez, a young single woman who had worked five years for the Department of Water and Power. Although there was no evidence of Mrs. McGee's exact age, she was described as "elderly." The record supports the prosecutor's claim that he had been excusing "a number" of "elderly jurors" since at least two, if not three, of the previously challenged White jurors would be classified as "elderly."[10] It is true that the prosecutor's alternate reason that Mrs. McGee had sons about the defendant's age does not survive analysis; three unchallenged jurors (two women and one man) also had sons the same age.[11] Finally, however, the record supports the prosecutor's references to her knowing "the area too familiarly." She was the only juror who had not only grown up there and was "up and down that street all the time" but also she had family (a granddaughter) living right there.[12] Accordingly, the prosecution also sufficiently rebutted the inference that Mrs. McGee's exclusion was based *solely* on group bias.

## II

### *Sentencing Error**

. . . . . . . . . . . . . . . . . . . . .

[10]Mr. Gilmore was 86 and Mrs. Hurley had been a lawyer for 41 years. While Mr. Barbe, who was excused, might also qualify as a senior citizen, it might be inferred, on the other hand, that at least one of the unchallenged jurors was also approaching senior citizen status.

[11]Mrs. McGee had four sons but the only age revealed was that of her youngest son who was 26. Mrs. Dunn and Mr. Capodici also had 26-year-old sons and Mrs. Sotela had two sons, aged 24 and 25 years.

[12]During the defense voir dire, defense counsel had asked Mrs. McGee: "Is there . . . anything you'd like to tell me about your background or yourself that would make me think that you would not be a fair juror? [¶] [Mrs. McGee]: Well, I don't know. [The prosecution] asked the question did you know anything about the vicinity of Los Robles and Adena. I do because I grew up here. I'm up and down that street all the time. [¶] [Defense counsel]: Let's get a little bit specific. [¶] Have you ever lived within a block or two of that immediate intersection? [¶] [Mrs. McGee]: No. [¶] [Defense counsel]: Have you ever had friends or relatives that lived in that building? [¶] [Mrs. McGee]: My granddaughter just moved there about two weeks—about a month ago, maybe, at 888 North Los Robles. [Defense Counsel]: So the scene where this event took place, as [the prosecutor] has told you, is 999, so that's three ones away from it, just up the block." During the prosecution voir dire, it was again elicited that Mrs. McGee's family was in "that vicinity."

One unchallenged juror (Mrs. Sotela) also indicated she was familiar with the area. But, unlike Mrs. McGee, Mrs. Sotela had no friends, relatives or acquaintances that lived near the area.

*See footnote *ante,* page 268.

## III

*Judgment*

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1987. Mosk, J., was of the opinion that the petition should be granted.