RENDERED:  MARCH 5, 2021; 10:00 A.M.

**ORDERED PUBLISHED:  APRIL 2, 2021; 10:00 A.M.**

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0176-MR

GEORGE CLAPP AND WILMA                                          APPELLANTS
CLAPP


                        APPEAL FROM FAYETTE CIRCUIT COURT
v.                      HONORABLE THOMAS L. TRAVIS, JUDGE
                        ACTION NO. 15-CI-03621


CRAIG G. VAN HORNE, M.D., Ph.D.                                    APPELLEE


                                OPINION
                               AFFIRMING

                            ** ** ** ** **

BEFORE:  LAMBERT, MAZE, AND L. THOMPSON, JUDGES.

LAMBERT, JUDGE:  In this medical malpractice action, George Clapp and

Wilma Clapp (collectively, the Clapps) have appealed from the Fayette Circuit

Court's January 3, 2020, trial verdict and judgment in favor the defendant below,

Craig Van Horne, M.D., Ph.D. (Dr. Van Horne).  The sole issue on appeal

addresses the trial court's denial of the Clapps' *Batson*[1] challenge to Dr. Van Horne's use of peremptory strikes to remove two prospective Black jurors from the panel. We affirm.

The underlying action arose as a result of George's treatment by neurosurgeon Dr. Van Horne for a diagnosis of idiopathic Parkinson's Disease beginning in June 2014. Dr. Van Horne surgically implanted a Deep Brain Stimulator, and George claimed to have sustained permanent injuries as a result of this procedure. The Clapps filed a complaint in October 2015 seeking damages for Dr. Van Horne's alleged negligence in his treatment of George as well as for loss of consortium for Wilma, his wife. A jury trial was held over several days beginning on December 9, 2019. At the conclusion of the trial, the jury returned a verdict in favor of Dr. Van Horne on the threshold question of whether he failed to comply with his duty of care. As a result, the trial court entered a judgment dismissing the Clapps' claims with prejudice on January 3, 2020. This appeal now follows.

The sole issue the Clapps have raised on appeal relates to the trial court's ruling on their *Batson* challenge during jury selection.

First, we shall set forth the parties' arguments at trial related to the *Batson* challenge. When the parties submitted their respective peremptory strike

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

lists at the conclusion of jury selection, counsel for Dr. Van Horne included two Black jurors, Jurors 3603 and 3514. Because they were Black, counsel for the Clapps requested that defense counsel offer race-neutral reasons for striking these jurors pursuant to *Batson*. Defense counsel stated that just because they were Black did not justify making a *Batson* challenge, but he indicated he would offer an explanation if the court required it. The court then requested that defense counsel articulate race-neutral reasons for the strikes.

As to Juror 3603, defense counsel stated that her body language was an issue and that she never said anything. As to Juror 3514, defense counsel stated that like the other juror, he never answered a question. For another example, counsel recounted this juror's lack of response when counsel asked the panel members if they would find in favor of Dr. Van Horne if defense counsel proved "x, y, and z." While other panel members raised their hands, Juror 3514 did not. When he asked the question for a second time, the juror looked at the other jurors and sort of raised his hand. Defense counsel did not feel comfortable with that response. He also pointed out that three other Black people remained on the jury panel. The court asked if there was any response from plaintiffs' counsel; no response was given. The court then found that the reasons defense counsel offered did not rise to the level of a race-neutral explanation to exercise the strikes, and it

did not permit the strikes to be used, thereby granting the Clapps' *Batson* challenge.

Defense counsel then stated that there was no racial reason for the strikes. He said both jurors were also young, while the defense wanted older people on the jury. In addition, Juror 3514 would not engage with him. He would not look at him or raise his hand for a legitimate reason when asked. Later, defense counsel stated that Juror 3603's strike sheet showed she still lived with her parents, providing an additional reason to strike her from the panel.

The court opted to go off the record to consider the three-part test in *Batson*. When back on the record, the court found that defense counsel had offered a race-neutral reason for striking the jurors. It did not believe that there had been a showing that the defense was being purposefully discriminatory, noting that there were several other members of the remaining jury panel who were Black. In addition, the court stated that it was not sure there was a prima facie showing that the challenges were exercised on the basis of race, backtracking itself on that issue. Therefore, the court reversed its earlier decision and permitted the strikes to stand.

In *Mash v. Commonwealth*, 376 S.W.3d 548 (Ky. 2012), the Supreme Court of Kentucky set forth the three-part *Batson* test as follows:

> Under *Batson*, claims of racial discrimination in the use of peremptory strikes are analyzed under a three-step test. "First, the defendant must show a *prima facie* case of racial discrimination. If the trial court is satisfied

with the defendant's showing, the burden shifts to the prosecutor to state race-neutral reasons for the peremptory strikes. The trial court must then determine whether the defendant has sufficiently proven purposeful discrimination." *Thomas v. Commonwealth*, 153 S.W.3d 772, 777 (Ky. 2004) (citing *Batson*, 476 U.S. at 93-98, 106 S. Ct. 1712). A trial court's denial of a *Batson* challenge is reviewed for clear error. *Washington v. Commonwealth*, 34 S.W.3d 376, 380 (Ky. 2000).

In this case, there is no need to determine whether a prima facie showing of discrimination was made under the first *Batson* prong because the prosecutor volunteered an explanation for his strike. *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky. 1992) (citing *Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 114 L. Ed. 2d 395 (1991)) ("[S]ince the prosecutor offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate issue of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing . . . becomes moot.").

The second *Batson* step, whether the prosecutor stated a race-neutral basis for the strike, was met in this case. This step sets a fairly low bar for the Commonwealth to meet. "[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360, 111 S. Ct. 1859. . . .

At the third step of *Batson*, the burden shifts back to the defendant to show "purposeful discrimination." *Hernandez*, 500 U.S. at 359, 111 S. Ct. 1859. At this step, the trial court was required to determine whether the prosecutor's race-neutral reason was actually a pretext for racial discrimination. "Because the trial court's decision on this point requires it to assess the credibility

and demeanor of the attorneys before it, the trial court's ultimate decision on a *Batson* challenge is like a finding of fact that must be given great deference by an appellate court." *Commonwealth v. Coker*, 241 S.W.3d 305, 308 (Ky. 2007). "In the absence of exceptional circumstances," appellate courts should defer to the trial court at this step of the *Batson* analysis. *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 170 L. Ed. 2d 175 (2008) (quoting *Hernandez*, 500 U.S. at 366, 111 S. Ct. 1859).

The third step of the *Batson* test is where "the persuasiveness of the justification becomes relevant." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995). "Although a prosecutor theoretically could fabricate a demeanor-based pretext for a racially-motivated peremptory strike, the third step in *Batson* alleviates this concern by permitting the court to determine whether it believes the prosecutor's reasons." *Thomas v. Commonwealth*, 153 S.W.3d 772, 778 (Ky. 2004).

*Mash*, 376 S.W.3d at 555-56.

As to whether the Clapps established a prima facie case under the first *Batson* step, we recognize that there are several elements that must be proven before the burden shifts to the other party:

To prevail on a *Batson* claim, the defendant must first "make a prima facie showing of discriminatory use of peremptory challenges." *United States v. Harris*, 192 F.3d 580, 586 (6th Cir. 1999). Under *Batson*, a prima facie case is established by showing each of the following elements:

[1] that [the defendant] is a member of a cognizable racial group . . .

-6-

> [2] that the prosecutor has exercised
> peremptory challenges to remove from the
> [jury pool] members of the defendant's race
> . . . [and]
> [3] that these facts and any other relevant
> circumstances raise an inference that the
> prosecutor used that practice to exclude the
> [potential jurors] from the petit jury on the
> account of their race.
>
> *Batson*, 476 U.S. at 96, 106 S. Ct. 1712. As explained in
> detail in the next section, the Supreme Court in *Powers v.
> Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411
> (1991), "modified the *Batson* prima facie case to allow a
> defendant to raise a *Batson* violation even if he is not of
> the same race as the excluded juror." *United States v.
> Odeneal*, 517 F.3d 406, 419 (6th Cir. 2008).

*United States v. Mahbub*, 818 F.3d 213, 224 (6th Cir. 2016). In this case, we note

that the Clapps are not Black. However, they are still permitted to raise a *Batson*

challenge as set forth in *Powers v. Ohio*:

> [T]he Equal Protection Clause prohibits a prosecutor
> from using the State's peremptory challenges to exclude
> otherwise qualified and unbiased persons from the petit
> jury solely by reason of their race, a practice that
> forecloses a significant opportunity to participate in civic
> life. An individual juror does not have a right to sit on
> any particular petit jury, but he or she does possess the
> right not to be excluded from one on account of race.

499 U.S. at 409, 111 S. Ct. at 1370.

In *Commonwealth v. Hardy*, 775 S.W.2d 919 (Ky. 1989), the Supreme

Court of Kentucky made it clear that a party raising a *Batson* challenge must do

more than state that the opposing party was attempting to strike a jury panel

member who was Black in order to meet the prima facie case:

> *Batson* requires more than a mere stating that the prosecutor struck a number of [B]lacks from the jury panel. In considering this matter, the trial judge should consider all the relevant circumstances. Hardy has not shown any "pattern" of strikes against [B]lack jurors regarding this particular venire, because only one of three were challenged.

> *Batson* also indicated that questions and statements during the voir dire may be used to support or refute an inference of discrimination. Hardy cannot demonstrate any circumstance in this regard because it was the defense counsel, not the prosecutor, who asked the panel if they would have a problem with the fact that the defendant was [B]lack and the victims were white.

> The U.S. Supreme Court indicated a confidence in trial judges and recognized a broad discretion in them to determine whether, under all the circumstances, a *prima facie* showing of discrimination had been made. There is no indication that the trial judge abused his discretion by ruling that Hardy had not made a sufficient showing or argument stating that the prosecutor had struck one of the three [B]lack jurors on the basis of race.

> *Batson* requires more than a simple numerical calculation. Numbers alone cannot form the only basis for a *prima facie* showing. Two California cases decided before *Batson* provide a persuasive analysis. *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978) indicated that the use of two peremptories to excuse the only two [B]lack jurors was found insufficient for a *prima facie* showing. *People v. Rousseau*, 129 Cal.App.3d 526, 179 Cal.Rptr. 892 (1982) stated that a claim of discriminatory exclusion requires the defendant to establish as complete a record of the circumstances as

is feasible and that from all the circumstances, he must show a strong likelihood that such persons are being challenged because of their group association rather than because of a specific bias. *Rousseau*, *supra*, further held that even though all the [B]lacks on the panel had been struck by the prosecutor, this alone was not enough to establish a *prima facie* showing of discrimination.

*Hardy*, 775 S.W.2d at 920.

In the present case, the trial court initially required defense counsel to articulate race-neutral reasons for striking the two jury panel members after the Clapps' counsel raised the *Batson* challenge. After hearing arguments, the court upheld this challenge. However, the court reconsidered its initial decision, stating it was "not sure" there was a prima facie showing that the challenges were exercised on the basis of race. We must agree with Dr. Van Horne that the Clapps did not establish a prima facie case of racial discrimination in this instance.

Our review of the trial record reflects that the Clapps' counsel raised a *Batson* challenge based solely upon defense counsel's use of peremptory strikes on two Black jury panel members. There was no other reason given, and the Clapps' counsel did not present any other argument on this element when the court reversed its initial ruling that had been in their favor. There are no other circumstances present that would permit the trial court to find that there was any racial motivation, especially in light of the fact that there were three other Black jury panel members who were not the subject of peremptory strikes by defense

-9-

counsel. Because there is simply no evidence of racial discrimination—other than the fact that two of the jurors sought to be stricken were Black—to establish a prima facie case under the first step of *Batson*, we hold that the trial court did not commit any error as a matter of law in denying the Clapps' *Batson* challenge in this case.

For the foregoing reasons, the judgment of the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Escum L. Moore, III
Lexington, Kentucky

James M. Francis
Lexington, Kentucky

BRIEF FOR APPELLEE:

Mark E. Nichols
Jeffrey A. Darling
Elizabeth A. Arrick
Lexington, Kentucky