Paul Louis FIELDS, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 84SC382.

Supreme Court of Colorado,
En Banc.

Feb. 17, 1987.

Rehearing Denied March 9, 1987.

Mary G. Allen, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for respondent.

DUBOFSKY, Justice.

We granted certiorari to review the decision of the court of appeals in *People v. Fields*, 697 P.2d 749 (Colo.App.1984), affirming the conviction of the defendant, Paul Louis Fields, of one count of first degree murder and two counts of attempted first degree murder. The court of appeals upheld the district court's refusal to consider the defendant's argument that the prosecutor was using his peremptory challenges in an unconstitutional manner to exclude Spanish-surnamed persons from the jury panel. We hold that a prosecutor's use of peremptory challenges systematically to exclude Spanish-surnamed persons from a jury deprives a defendant of the right to trial by an impartial jury guaranteed by the sixth amendment to the federal constitution and article II, section 16 of the Colorado Constitution. Although a defendant may establish a prima facie violation of this right solely on the basis of the use of peremptory challenges at the defendant's trial, here the transcript of the voir dire allows us to determine that the prosecutor's use of peremptory challenges to excuse three of the four Spanish-surnamed persons from the jury panel did not violate the defendant's right to an impartial jury. We affirm the judgment of the court of appeals.

I.

In August, 1980, the defendant began employment as a security guard at an Aurora K–Mart store. Jay Davis was the director of security for the store, and Doug Clunie was the immediate supervisor of the defendant and Davis. The store's manager was Anthony Butera. The defendant, who is black, testified at trial that he had a good working relationship with Davis and Butera and that his working relationship with Clunie initially had been good. However, the defendant's relationship with Clunie de-

teriorated and in January, 1981, the defendant overheard Clunie, a white, referring to the defendant's apprehension of black shoplifting suspects as "our coon has caught three more coons today." In early March, 1981, Clunie referred to the defendant as "burrhead." The defendant notified both the Urban League and the K–Mart security district manager of the name-calling incidents.

On March 19, 1981, the day after the district manager went to the store and discussed the name-calling incidents with Butera and Davis, the defendant was told that Butera had his time card and that he should go to Butera's office where Clunie and Davis joined Butera and the defendant. Butera told the defendant that his employment was terminated. The defendant responded by pulling a gun from his pocket and shooting Davis and Clunie; the defendant also fired toward Butera, but the shots missed him. Clunie died as a result of his wounds, and Davis was permanently injured.

The defendant was tried in the Arapahoe County District Court. During voir dire, after the prosecution had exercised six of its ten allotted peremptory challenges,[1] the defendant moved for a mistrial and for quashing of the jury panel on the ground that the prosecution was using its peremptory challenges systematically to exclude minority group members from the jury panel. In support of his motion, the defendant noted that the prosecution had exercised its second, fourth, and sixth peremptory challenges against Spanish-surnamed persons. The prosecution did not respond to the motion, which was denied by the court without discussion except to note that the defendant had exercised his fourth peremptory challenge to excuse the only remaining Spanish-surnamed panel member.

The jury finally seated did not have any black or Spanish-surnamed jurors. After the jury returned guilty verdicts against the defendant, he moved for a new trial, again raising the issue of the prosecution's use of peremptory challenges. The court denied the motion, and the defendant appealed to the court of appeals.

The court of appeals decided that the district court did not err in refusing to consider the defendant's claim that the prosecution had exercised its peremptory challenges in an unconstitutional manner. In so holding, the court of appeals relied on *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), in which the United States Supreme Court held that a defendant could not establish a violation of the equal protection clause of the fourteenth amendment solely on the basis of the prosecutor's use of peremptory challenges at the defendant's trial. The court of appeals declined the defendant's invitation to hold that the jury selection procedure implicated the sixth amendment or state constitutional provisions.[2]

## II.

*Swain v. Alabama*, relied on by the court of appeals and the People, involved a challenge by a black defendant in a rape trial to the selection of the jury. The defendant pointed out that the six black people available for jury service in his case were all struck by the prosecutor through the use of what were, in effect, peremptory challenges, and the case was tried to an all-white jury. The defendant alleged that the systematic striking of blacks from the jury venire constituted purposeful discrimination in violation of the equal protection clause of the fourteenth amendment to the United States Constitution.

1. Section 16–10–104(1), 8A C.R.S. (1986), in effect at the time of the defendant's trial, provides that "[i]n capital cases, the state and the defendant, when there is one defendant, shall each be entitled to ten peremptory challenges." *See also* Crim.P. 24(d).

2. The defendant's claim in the court of appeals, as well as in this court, was based on the sixth amendment to the federal constitution and article II, section 16 of the Colorado Constitution, not the equal protection clause of the federal constitution that was the basis of the decision in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

Addressing the defendant's claim, the Court began its discussion with the reiteration of the fundamental principle, developed in a line of cases beginning with *Strauder v. West Virginia*, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1879), that the wholesale exclusion of blacks from jury service solely because of their race and for reasons unrelated to a particular case is prohibited by the equal protection clause. However, the Court decided in view of the long history and the importance of peremptory challenges to the system of trial by jury in this country that it would not be warranted in holding that a prosecutor's use of peremptory challenges in a given case may be subject to constitutional scrutiny. Such a holding, in the Court's view, would be at odds with the "essential nature" of peremptory challenges as challenges "exercised without a reason stated, without inquiry, and without being subject to the court's control." *Swain*, 380 U.S. at 220, 85 S.Ct. at 836 (citations omitted). Therefore, the Court decided:

> The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes.

*Id.* at 222, 85 S.Ct. at 837. The Court, however, suggested that the presumption of propriety in the use of peremptory challenges might be overcome by proof of a "prosecutor's systematic use of peremptory challenges against Negroes over a period of time." *Id.* at 227, 85 S.Ct. at 839.

The Court's holding in *Swain* concerning the burden of proving purposeful discrimination in the use of peremptory challenges prompted commentator criticism.[3] Two main objections to the decision were frequently raised. First, the realities of the criminal justice system and empirical evidence indicated that for a defendant to meet the burden of proof referred to in *Swain* would be a virtual impossibility because of the expense involved in transcribing voir dire in numerous criminal cases and the lack of information about the race of prospective jurors. Another defect perceived in *Swain* was that it precluded the first defendants experiencing discriminatory use of peremptory challenges in a given court from obtaining relief for a violation of an unquestioned right.

Motivated by these concerns and other considerations, several state courts relied on state constitutional provisions to depart from the rule of *Swain*. The seminal state court case rejecting the *Swain* approach was *People v. Wheeler*, 22 Cal.3d 258, 148 Cal.Rptr. 890, 583 P.2d 748 (1978). *Wheeler*, like *Swain*, involved a black defendant's challenge to the exclusion of members of his race from the jury panel by the prosecutor's use of peremptory challenges. Rather than address the issue under the equal protection clause of the fourteenth amendment, the California Supreme Court decided that "the right to trial by a jury drawn from a representative cross-section of the community is guaranteed equally and independently by the Sixth Amendment to the federal Constitution and by article 1, section 16, of the California Constitution." *Id.*, 148 Cal.Rptr. at 899, 583 P.2d at 758 (footnote omitted). The court then concluded that a prosecutor's systematic use of peremptory challenges to exclude members of an identifiable racial, religious, ethnic, or other cognizable group solely on the ground of membership in the group or "group bias" violated the California constitution. *Id.* 148 Cal.Rptr. at 903, 583 P.2d at 761–62. The court cautioned that the right under discussion was not "the right

---

3. *See, e.g.,* Brown, McGuire, and Winters, *The Peremptory Challenge as a Manipulative Device in Criminal Trials: Traditional Use or Abuse,* 14 New Eng.L.Rev. 192 (1978); Winick, *Prosecutorial Peremptory Challenge Practices in Capital Cases: An Empirical Study and a Constitutional Analysis,* 81 Mich.L.Rev. 1 (1982); Note, *Limiting the Peremptory Challenge: Representation of Groups on Petit Juries,* 86 Yale L.J. 1715 (1977); Comment, *Swain v. Alabama, A Constitutional Blueprint for the Perpetuation of the All-White Jury,* 52 Va.L.Rev. 1157 (1966).

to a jury that mirrors the demographic composition of the population, or necessarily includes members of [a defendant's] own group, or indeed is composed of any particular individuals." *Id.,* 148 Cal.Rptr. at 903, 583 P.2d at 762. Rather, the right described by the court consists of the right to a "jury that is as near an approximation of the ideal cross-section of the community as the process of random draw permits." *Id.* Perhaps the most significant aspect of *Wheeler* was the court's decision to depart from *Swain* by recognizing that a defendant might make out a case of unconstitutional discrimination in the use of peremptory challenges on the basis of evidence derived from the defendant's own case. The court set out in detail the order and elements of proving such a case.

The *Wheeler* approach to allegations of unconstitutional use of peremptory challenges was adopted basically intact by the supreme courts of Delaware, *Riley v. State,* 496 A.2d 997 (Del.1985), *cert. denied,* — U.S. —, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986), Massachusetts, *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499 (1979), *cert. denied* 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979), and New Jersey, *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986).[4] In *State v. Neil,* 457 So.2d 481 (Fla.1984), the Supreme Court of Florida adopted a modified version of the *Wheeler* approach.[5] The New Mexico Court of Appeals also held that in a proper case a defendant, employing the *Wheeler* method of proof, could make out a violation of the New Mexico state constitution based on the prosecutor's use of peremptory challenges. *State v. Crespin,* 94 N.M. 486, 612 P.2d 716 (App.1980). In

*Booker v. Jabe,* 775 F.2d 762 (6th Cir.1985) (*cert. granted sub nom. Michigan v. Booker,* — U.S. —, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986) and *McCray v. Abrams,* 750 F.2d 1113 (2d Cir.1984) *cert. denied* 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983), 756 F.2d 277 (2d Cir.1985) (en banc denial of reconsideration), *cert. granted* — U.S. —, 106 S.Ct. 3289, 92 L.Ed.2d 705 (1986) (judgments vacated and cases remanded for further consideration in light of *Allen v. Hardy,* — U.S. —, 106 S.Ct. 2878, 92 L.Ed.2d 199 (1986), which held that *Batson v. Kentucky,* — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is not to be applied retroactively to convictions that were final before *Batson* decided), two United States courts of appeals held that a claim of violation of the sixth amendment to the federal constitution could be established on the basis of the use of peremptory challenges to exclude jurors on racial grounds in a particular trial.

The defendant urges us to follow the *Wheeler* line of cases by holding that the prosecutor's use of his peremptory challenges to exclude Spanish-surnamed persons from a jury panel solely on the basis of presumed group characteristics violates the right to trial by an impartial jury guaranteed by the sixth amendment to the federal constitution[6] and by article II, section 16 of the Colorado constitution,[7] and to adopt the *Wheeler* approach to proving such violations.

### III.

After this case was briefed and argued, the United States Supreme Court issued its

---

**4.** *Gilmore,* 511 A.2d 1150, was decided after the United States Supreme Court decision in *Batson v. Kentucky,* — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The New Jersey Supreme Court addressed the state constitutional protection for trial by an impartial jury, relying on *Wheeler,* 148 Cal.Rptr. 890, 583 P.2d 748, because *Batson* did not express a view on the sixth amendment approach.

**5.** While the *Wheeler* court spoke in broad terms of unconstitutional exclusion of jurors on "racial, religious, ethnic, or similar grounds," 148 Cal.Rptr. at 902, 583 P.2d at 761, the *Neil* court

limited its holding to claims of exclusion because of race. 457 So.2d at 487.

**6.** The sixth amendment to the federal constitution provides, "In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury...."

**7.** Article II, section 16 of the Colorado constitution provides, "In criminal prosecutions the accused shall have the right to ... a speedy trial by an impartial jury...."

watershed opinion in *Batson v. Kentucky,* —— U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Again at issue in *Batson* was the allegedly improper use of peremptory challenges to exclude black jurors in the trial of a black defendant. The Court reaffirmed the principle recognized in *Swain* that a "State's purposeful or deliberate denial to Negroes on account of race of participation as jurors in the administration of justice violates the Equal Protection Clause," *id.* at 1716 (quoting *Swain,* 380 U.S. at 203–204, 85 S.Ct. at 826), and that the proscriptions of the equal protection clause apply to a prosecutor's use of peremptory challenges. However, the Court rejected the rule derived from *Swain* regarding proof of the violation, explaining that its decisions since *Swain* indicate recognition "that a defendant may make a prima facie showing of purposeful racial discrimination in selection of the venire by relying solely on the facts concerning its selection *in his case.*" *Id.* at 1722. The Court then set out in detail the order and elements of proof of a claim that a prosecutor has engaged in purposeful discrimination by using peremptory challenges to exclude members of the defendant's race from the jury panel.[8]

The People, in their list of supplemental authorities, cite *Batson,* emphasizing the Court's determination that in order to make out a prima facie equal protection violation based on the use of peremptory challenges a "defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race." 106 S.Ct. at 1723. The People appear to be suggesting that the equal protection analysis employed in *Batson* is not applicable to the facts of this case where a black defendant is protesting the exclusion of Spanish-surnamed jurors. It is true that cases in which jury selection procedures have been found to violate equal protection, the defendants and the improperly excluded jurors were almost invariably members of the same group. Perhaps out of recognition of this fact, some commentators have noted that "[u]nder the *Strauder* ... equal protection approach, the constitutional challenge can be made only by a defendant who is a member of the excluded class...." W. LaFave and J. Israel, *Criminal Procedure,* ch. 21, § 21.2 at 709 (1984) (footnote omitted).[9]

 The validity of this statement as a matter of constitutional doctrine depends on the definition of the equal protection right recognized in cases such as *Strauder* and *Batson.* In both of these cases, the Court observed that a defendant is denied equal protection where discriminatory jury selection practices deprive him of the opportunity to have a jury that includes "persons having the same legal status in society as that which he holds." *Batson,* 106 S.Ct. at 1717 (quoting *Strauder,* 100 U.S. at 308). Under equal protection doctrine the right to be tried before a jury of one's peers is not so clearly undermined where the excluded jurors are not members of the same group as the defendant.[10] However,

---

**8.** In *Griffith v. Kentucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the United States Supreme Court applied *Batson* retroactively to all cases, state or federal, pending on direct review or not yet final.

**9.** *But see United States v. Perez-Hernandez,* 672 F.2d 1380 (11th Cir.1982) (male hispanic entitled to raise claim that exclusion of blacks and women from serving as grand jury foreman violated equal protection clause). Professors LaFave and Israel view this decision as analytically unsound. W. LaFave and J. Israel, *supra,* ch. 21, § 21.2 at 709 n. 17.

**10.** The equal protection analysis begun in *Strauder v. West Virginia,* 100 U.S. (10 Otto) 303, 25

L.Ed. 664 (1880) and continued through *Swain* and *Batson* is subject to Justice Rehnquist's criticism:

> In my view, there is simply nothing 'unequal' about the State using its peremptory challenges to strike blacks from the jury in cases involving black defendants, so long as such challenges are also used to exclude whites in cases involving white defendants, Hispanics in cases involving Hispanic defendants, Asians in cases involving Asian defendants, and so on.

*Batson,* 106 S.Ct. at 1744 (Rehnquist, J., dissenting).

both *Strauder* and *Batson* identify other concerns that arise in cases involving discriminatory jury selection practices. First, excluding a person from jury service because of the person's race is unconstitutional discrimination against the prospective juror as well as the defendant. *Batson*, 106 S.Ct. at 1717–18; *Strauder*, 100 U.S. at 308. In addition, as stated by the Court in *Batson*, 106 S.Ct. at 1718, "[t]he harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." [11] Such concerns in no way depend on excluded jurors and defendants being members of the same group.

The question whether the equal protection clause prohibits the exclusion of jurors of one group in the trial of a defendant of a different group need not be resolved here because it is clear that regardless of whether the allegations of the defendant in this case would support an equal protection challenge, the issue raised by the defendant in his petition for certiorari and upon which we granted review is whether the prosecution's use of peremptory challenges violated the defendant's right to a trial by an impartial jury under the sixth amendment to the federal constitution and article II, section 16 of the Colorado Constitution.

Under both federal and state constitutions, the right to an impartial jury includes the right to a jury drawn from a representative or fair cross-section of the community. *Taylor v. Louisiana,* 419 U.S.

522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Aurora by and on behalf of People v. Rhodes,* 689 P.2d 603 (Colo.1984); *People v. Moody,* 630 P.2d 74 (Colo.1981); *People v. Sepeda,* 196 Colo. 13, 581 P.2d 723 (1978). The court in *Taylor* gave the following reasons for finding the fair cross-section requirement fundamental to the impartial jury guarantee of the sixth amendment:

> The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps over-conditioned or biased response of a judge. *Duncan v. Louisiana,* 391 U.S. [145] at 155–156 [88 S.Ct. 1444, 1450–1451, 20 L.Ed.2d 491 (1968) ]. This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democratic heritage but is also critical to public confidence in the fairness of the criminal justice system.... "Trial by jury presupposes a jury drawn from a pool broadly representative of the community as well as impartial in a specific case.... [T]he broad representative character of the jury should be maintained, partly as assurance of a diffused impartiality and partly because sharing in the administration of justice is a phase of civic responsibility." *Thiel v. Southern Pacific Co.,* 328 U.S. 217, 227 [66 S.Ct. 984, 989, 90 L.Ed. 1181] (1946) (Frankfurter, J., dissenting).

11. We note the similarity in the language employed in *Batson* and the traditional language in sixth amendment impartial jury cases. Justice Stevens pointed out in his concurring opinion in *Batson* that the petitioner did not rely on the equal protection clause in seeking to have his conviction overturned. 106 S.Ct. at 1729–1730 (Stevens, J., concurring). However, Justice Stevens concurred in the Court's decision based on equal protection grounds because the assistant attorney general for Kentucky emphasized the centrality of the Kentucky Supreme Court's reliance on the equal protection analysis in *Swain*. *Swain* was decided in 1965 before the Supreme Court ruled that the sixth amendment guarantee of an impartial jury was binding on the states through the fourteenth amendment, *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and before the Court ruled that the fair cross-section requirement is an essential component of the sixth amendment guarantee, *Taylor,* 419 U.S. 522, 95 S.Ct. 692.

419 U.S. at 530–531, 95 S.Ct. at 697–698.[12] *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), set out the elements of a prima facie violation of the fair cross-section requirement in the early stages of jury selection: "the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Although the United States Supreme Court has applied the sixth amendment fair cross-section requirement only to selection of jury venires, the court has discussed the requirement in the context of petit juries: "All that the Constitution forbids, however, is systematic exclusion of identifiable segments of the community from jury panels and the juries ultimately drawn from those panels; . . . ." *Apodaca v. Oregon,* 406 U.S. 404, 413, 92 S.Ct. 1628, 1634, 32 L.Ed.2d 184 (1972) (jury verdict need not be unanimous); *see also Williams v. Florida,* 399 U.S. 78, 100, 90 S.Ct. 1893, 1906, 26 L.Ed.2d 446 (1970) (in upholding the constitutionality of a Florida statute allowing six-person juries, the court stated, "[T]he number [of jurors] should probably be large enough . . . to provide a fair possibility for obtaining a representative cross-section of the community.").

In *McCray v. Abrams,* 750 F.2d at 1131, the United States Court of Appeals for the Second Circuit articulated a sixth amendment standard for voir dire:

[I]n order to establish a prima facie violation of his right to the possibility of a fair cross section in the petit jury, the defendant must show that in his case, (1) the group alleged to be excluded is a cognizable group in the community, and (2) there is a substantial likelihood that the challenges leading to this exclusion have been made on the basis of the individual venirepersons' group affiliation rather than because of any indication of a possible inability to decide the case on the basis of the evidence presented.[13]

The Second Circuit justified the application of the cross-section requirement to the petit jury on the basis that "[i]f there is a Sixth Amendment requirement that the venire represent a fair cross-section of the community it must logically be because it is important that the defendant have the chance that the petit jury will be similarly constituted. . . . [T]he Amendment simply prohibits the state's systematic elimination of the possibility of such a carry-over." 750 F.2d at 1128–29. *See also Booker v. Jabe,* 775 F.2d at 771. Relying on *McCray,* the New Jersey Supreme Court in *Gilmore,* 511 A.2d at 1160, held that the right to an impartial jury entails the guarantee that the state's use of peremptory challenges does not restrict unreasonably the possibility that the petit jury will comprise a representative cross-section of the community. *See also Wheeler,* 148 Cal.Rptr. at 903, 583 P.2d at 762 ("[A] party is constitutionally entitled to a petit jury that is as near an approximation of the ideal cross-section of the community as the process of random draw permits.").

12. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), invalidated a Louisiana statute that allowed women automatic exemptions from jury service with the consequence that criminal jury venires were almost totally male. As a justification for departing from *Hoyt v. Florida,* 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), which had permitted the exclusion of women from jury service despite the sixth amendment requirement that juries be drawn from a fair cross section of the community, the court observed that "[c]ommunities differ at different times and places. What is a fair cross section at one time or place is not

necessarily a fair cross section at another time or a different place." 419 U.S. at 537, 95 S.Ct. at 701.

13. The *McCray* court departed from the standard in *Duren v. Missouri,* 439 U.S. at 364, 99 S.Ct. at 668, on the basis that the second factor in *Duren* is not applicable to the voir dire stage of jury selection. The *McCray* court reformulated the third *Duren* factor in order to allow systematic exclusion to be established in an individual case. 750 F.2d at 1131.

The *Batson* interpretation of the equal protection clause of the fourteenth amendment and the *Wheeler-McCray* interpretation of the sixth amendment are nearly identical. *See Gilmore,* 511 A.2d at 1157; *Wheeler,* 148 Cal.Rptr. at 908–909, 583 P.2d at 767.[14] The two approaches differ in that the sixth amendment right to a jury comprising a fair cross-section of the community "is a right of all defendants, including those who are not members of the group excluded." W. LaFave and J. Israel, *supra,* ch. 21, § 21.2 at 713. *See, e.g., Taylor,* 419 U.S. 522, 95 S.Ct. 692 (male defendant's right to impartial jury violated by exclusion of women from jury service); *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (white defendant could base cognizable sixth amendment claim on exclusion of black jurors); *Roman v. Abrams,* 608 F.Supp. 629 (S.D.N.Y.1985) (white defendant has standing under sixth amendment to challenge disproportionate exclusion of blacks from jury). Spanish-surnamed persons are a cognizable group for purposes of determining whether a defendant has been denied the opportunity for a jury composed of a fair cross-section of the community. *See, e.g., People v. Trevino,* 39 Cal.3d 667, 217 Cal.Rptr. 652, 704 P.2d 719 (1985) ("Spanish-surnamed" is sufficiently descriptive of cognizable group to satisfy the *Wheeler* test for identifying prosecutorial abuse of peremptory challenge); *cf. Castaneda v. Partida,* 430 U.S. 482, 494–495, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) (first step in showing equal protection violation in selection of grand jurors is to establish that under-represented group is recognizable, distinct class; it is "no longer open to dispute that Mexican-Americans are a clearly identifiable class."); *Hernandez v. State of Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (Spanish-surnamed persons are a cognizable class in equal protection analysis). Spanish-surnamed persons clearly constitute a cognizable group under both equal protection and sixth amendment analyses.[15]

14. The ideal of an impartial jury is both that its members should be different from each other, as seen in the cross-section of the community cases, and that its members should be individually "indifferent." Babcock, *Voir Dire: Preserving "Its Wonderful Power",* 27 Stan.L.Rev. 545, 551–552 (1975). Logically the sixth amendment analysis should apply to voir dire where the defendant's interest in an impartial jury is paramount and the fourteenth amendment right to random selection of jurors from a representative cross-section of the community should apply at the venire stage; however, under *Swain* and *Batson,* the fourteenth amendment has been applied at the voir dire stage of juror selection, and under *Taylor* and *Duren,* the sixth amendment has been applied to the venire stage.

15. Courts have applied the sixth amendment fair cross-section analysis to uphold claims of groups defined by race, sex, national origin, religion, age, economic status, and occupation. 86 Yale L.J. at 1735; Note, *The Cross-Section Requirement and Jury Impartiality,* 73 Calif.L. Rev. 1555, 1562 (1985). Most of these decisions offer little guidance beyond the particular circumstances of each case, reflecting perhaps the language in *Taylor,* 419 U.S. at 537, 95 S.Ct. at 701, that "[w]hat is a fair cross-section at one time or place is not necessarily a fair cross-section at another time or a different place." However, the United States Supreme Court originally defined cognizability in terms of whether a group had been singled out for distinctive treatment in the past. *Hoyt v. Florida,* 368 U.S. 57, 60, 82 S.Ct. 159, 161, 7 L.Ed.2d 118 (1961) (citing *Hernandez v. State of Texas,* 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866 (1954)). More recent formulations have used terminology less oriented toward equal protection language, *Peters v. Kiff,* 407 U.S. 493, 503–504, 92 S.Ct. 2163, 2168–2169, 33 L.Ed.2d 83 (suggesting that a group is legally cognizable to the extent that it displays distinctive "qualities of human nature and varieties of human experience" or a unique perspective on events). Nevertheless, historical discrimination remains an important factor, and groups that are defined on the basis of race, alienage, national origin and religion, suspect classifications triggering strict scrutiny under federal equal protection analysis, *City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), are most readily recognized (with the exception of alienage because aliens are not entitled to serve as jurors, *Skafte v. Rorex,* 191 Colo. 399, 553 P.2d 830 (1976); *Perkins v. Smith,* 370 F.Supp. 134 (Md.1974), judgment affirmed, 426 U.S. 913 (1976); § 13–71–109, 6 C.R.S. (1973)) as cognizable groups in sixth amendment cases. 73 Calif.L.Rev. at 1562. In a decision announced a week after *Batson,* the United States Supreme Court described "[o]ur prior jury-representativeness cases, whether based on the fair cross-section component of the Sixth Amendment or the Equal Protection Clause of the

The only remaining objection in this case to recognizing the validity of the defendant's claim of a violation of his right to trial by an impartial jury relates to the effect of such recognition on the vitality of the peremptory challenge system.[16] The various positions in the debate on the vitality of peremptory challenges are reflected in the opinions in *Batson.* In dissent, Chief Justice Burger argued that peremptory challenges eliminate extremes of partiality on both sides and that permitting unexplained peremptories has long been regarded as a means to strengthening our jury system. 106 S.Ct. at 1735 (Burger, J., dissenting). The chief justice quoted Babcock, *Voir Dire: Preserving "Its Wonderful Power",* 27 Stan.L.Rev. 545, 553–554 (1975):

> The peremptory, made without giving any reason, avoids trafficking in the core of truth in most common stereotypes.... Common human experience, common sense, psychosociological studies, and public opinion polls tell us that it is likely that certain classes of people statistically have predispositions that would make them inappropriate jurors for particular kinds of cases. But to allow this knowledge to be expressed in the evaluative terms necessary for challenges for cause would undercut our desire for a society in which all people are judged as individuals and in which each is held reasonable and open to compromise.... Instead we have evolved in the peremptory challenge a system that allows the covert expression of what we dare not say but know is true more often than not.

*Id.* at 1735–1736. The chief justice concluded that there is no middle ground between a challenge for cause that has to be explained and a peremptory challenge that does not. *Id.* at 1739. Justice Marshall, concurring in *Batson,* would eliminate peremptory challenges entirely. 106 S.Ct. 1712, 1726 (Marshall, J., concurring). He observed that the inherent potential of peremptory challenges to distort the jury process by permitting the exclusion of jurors on racial grounds should not be countenanced and that use of peremptory challenges by both prosecutors and defendants should be eliminated. *Id.* at 1728–1729.

The majority in *Batson* adopted an intermediate position, described more fully in Part IV, *infra.* The *Batson* court described *Swain* as accommodating the prosecutor's historical privilege of peremptory challenge free of judicial control and the constitutional prohibition on exclusion of persons from jury service on account of race. *Id.* at 1720. To preserve the peremptory nature of the prosecutor's challenges, the court in *Swain* declined to scrutinize the prosecutor's actions in a particular case by relying on a presumption that the challenges were exercised properly. *Id.* The effect of *Swain* was to place "on defendants a crippling burden of proof" and leave prosecutors' peremptory challenges "largely immune from constitutional scrutiny." *Id.* at 1720–1721. To subject the prosecutor's exercise of peremptory challenges to more effective review under the equal protection clause, the court in *Batson* concluded that a "defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury

Fourteenth Amendment" as having involved "such groups as blacks, women, and Mexican-Americans." *Lockhart v. McCree,* —— U.S. ——, 106 S.Ct. 1758, 1765, 90 L.Ed.2d 137 (1986) (citations omitted).

State supreme courts relying primarily on state constitutional provisions have identified groups distinguished on racial, religious, ethnic or similar grounds, *Wheeler,* 148 Cal.Rptr. at 902, 583 P.2d at 761; *Soares,* 387 N.E.2d at 515 n. 29 and 516 n. 33; *Gilmore,* 511 A.2d at 1158–1159, n. 3. Colorado's constitution does not contain a provision comparable to those in the California, Massachusetts and New Jersey constitutions.

However, article II, section 23 of the Colorado Constitution provides, "[T]he right of any person to serve on any jury shall not be denied or abridged on account of sex...." In order to avoid an open-ended definition of cognizable groups that could require extensive hearings each time defense counsel could discern a pattern in the prosecutor's exercise of peremptory challenges, we believe that a group is legally cognizable if it is defined on the basis of race, national origin, religion or sex.

16. For a history of peremptory challenges, *see Swain,* 380 U.S. at 212–216, 85 S.Ct. at 831–833.

solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 1722–1723. In addition to showing that he is a member of a cognizable racial group and that relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude prospective petit jurors on account of race, "the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' *Avery v. Georgia,* 345 U.S. [559,] 562 [73 S.Ct. 891, (1953)]." *Id.* at 1723.[17]

■ *Batson* places limits on the exercise of peremptory challenges when a defendant raises a prima facie equal protection claim. The only reason we can perceive for not placing similar limits on the exercise of peremptory challenges when the defendant raises a prima facie impartial jury claim is that the impartial jury claim may be made by a defendant who would not be entitled to raise the issue under equal protection analysis because the excluded jurors are not members of the same group as the defendant.[18] Given the concern voiced by the United States Supreme Court in *Batson* that "public respect for our criminal justice system and the rule of law will be strengthened if we ensure that no citizen is disqualified from jury service because of his race," *id.* at 1724, and given our limited application of the term cognizable group in this case, we believe that recognition of the defendant's right to establish a prima facie case that the prosecutor's exercise of peremptory challenges to exclude Spanish-sur-

named persons denied him an impartial jury will not limit significantly the fair exercise of peremptory challenges. Accordingly, contrary to the ruling of the court of appeals, we conclude that a prosecutor's purposeful, discriminatory and systematic exercise of peremptory challenges in a given case to exclude from the jury panel Spanish-surnamed persons solely on the basis of presumed group characteristics violates the sixth amendment to the United States Constitution and article II, section 16 of the Colorado Constitution.

■ We reiterate that the right to a jury comprising a fair cross-section of the community does not require that each petit jury mirror the demographic composition of the community or that any particular jury actually contain members of the defendant's own group. *Taylor,* 419 U.S. at 538, 95 S.Ct. at 701; *People v. Moody,* 630 P.2d at 79; *People v. Sepeda,* 581 P.2d at 727. The right to trial by an impartial jury does guarantee that the possibility of a petit jury in a given case representing a fair cross-section of the community will not be limited arbitrarily by the discriminatory and systematic use of peremptory challenges.

### IV.

The question that we next address concerns the framework for analyzing claims of unconstitutional use of peremptory challenges in a given case. In resolving this question we have the benefit of the procedure developed in *Wheeler* and followed in subsequent cases, including *Batson.*

---

**17.** One commentator suggests an intermediate position that would be easier for appellate courts to monitor, involving the abolition of peremptory challenges and the expansion of grounds supporting challenges for cause. 73 Calif.L.Rev. at 1590–1596.

**18.** One commentator argues that where a suspect class is disproportionately excluded from the petit jury, the equal protection clause affords greater protection to a defendant than the sixth amendment because under the equal protection clause the state must put forth a compelling state interest to justify exclusion of the suspect class while under the sixth amendment

the state could rebut a prima facie case by offering a nondiscriminatory explanation or by advancing a significant state interest. Note, *Rethinking Limitations on the Peremptory Challenge,* 85 Colum.L.Rev. 1357, 1376 (1985). That distinction did not survive the decision in *Batson* where the court held under equal protection principles that once the defendant makes a prima facie showing, "the burden shifts to the state to come forward with a neutral explanation for challenging black jurors" and the neutral explanation must be related "to the particular case to be tried." 106 S.Ct. at 1723.

█ It is to be presumed that the prosecutor has exercised peremptory challenges on constitutionally permissible grounds. The presumption may be rebutted by a defendant's demonstration of a prima facie case of discrimination. This can be done by showing that the persons excluded are members of a cognizable group for purposes of the fair cross-section requirement and that considering all the circumstances of the case there is a strong likelihood that the jurors were excused solely because of their membership in the group. In order to establish the strong likelihood of improper exclusion, a defendant may rely on, among other things, the following factors discussed by the court in *Wheeler*, 148 Cal. Rptr. at 905, 583 P.2d at 764:

> [T]he party may show that his opponent has struck most or all of the members of the identified group from the venire, or has used a disproportionate number of peremptories against the group. He may also demonstrate that the jurors in question share only this one characteristic—their membership in the group—and that in all other respects they are as heterogeneous as the community as a whole. Next the showing may be supplemented when appropriate by such circumstances as the failure of his opponent

to engage the same jurors in more than desultory voir dire, or indeed to ask them any questions at all. Lastly ... the defendant need not be a member of the excluded group in order to complain of a violation of the representative cross section rule; yet if he is, and especially if in addition his alleged victim is a member of the group to which the majority of the remaining jurors belong, these facts may also be called to the court's attention.

(footnote omitted).[19] *See also Batson*, 106 S.Ct. at 1722–1723.

█ After the defendant has presented evidence supporting a claim of unconstitutional discrimination in the use of peremptory challenges, the trial court must determine whether the evidence is sufficient to establish a prima facie case. If the court decides that a prima facie case has been made out, the burden then shifts to the state to rebut the inference that the jurors were excluded solely because of group membership. The prosecutor need not provide reasons for excluding the jurors that would justify a challenge for cause. Instead, the prosecutor must articulate reasons for the exercise of the disputed challenges that are unrelated to membership in a cognizable group and rea-

---

19. The California Supreme Court applied its decision in *Wheeler* to peremptory challenges exercised by the defendant as well as the prosecution, thus the language referring to "the party" and "his opponent." We note, however, that article 1, section 16 of the California Constitution provides, "Trial by jury is an inviolate right and shall be secured to all ...," while the language of the sixth amendment and of article II, section 16 of the Colorado Constitution refer to the right of the accused to an impartial jury. *See also* 85 Colum.L.Rev. at 1360 n. 21; *but see Booker v. Jabe*, 775 F.2d at 772. It may be that the question of the exercise of peremptory challenges by parties other than a prosecutor in a manner that improperly excludes cognizable groups from a jury should be reviewed under the supervisory authority of a supreme court. In *Thiel v. Southern Pacific Co.*, 328 U.S. 217, 220, 66 S.Ct. 984, 985, 90 L.Ed. 1181 (1946), the United States Supreme Court held that the decision by the clerk of the court and the jury commissioner for the federal district court in San Francisco to exclude from the jury lists all persons who would not receive their daily wage if they served as jurors violated the American

tradition of trial by jury in either criminal or civil proceedings that "contemplates an impartial jury drawn from a cross-section of the community." Because the court could not sanction the method by which the jury panel was formed, it reversed the judgment below "in the exercise of our power of supervision over the administration of justice in the federal courts." *Id.* at 225, 66 S.Ct. at 988. The dissent observed that in *Thiel* "[n]o constitutional issue is at stake. The problem is one of judicial administration. ... [T]he question now before us comes to this: Have the district judges for the Northern District of California, supported by the circuit judges of the Ninth Circuit, abused their discretion in sanctioning a practice of not calling for jury duty those who are dependent upon a daily wage for their livelihood?" *Id.* at 227–229, 66 S.Ct. at 989–990 (Frankfurter, J., dissenting). In this case we need not resolve whether or to what extent limitations on peremptory challenges exercised by the prosecutor apply to peremptory challenges exercised by defense counsel or to peremptory challenges in civil cases.

sonably relevant to the particular case unless the prosecutor is excluding "members of a cognizable group for valid, articulated, trial-related reasons." *Gilmore*, 511 A.2d at 1162, citing *Weathersby v. Morris*, 708 F.2d 1493 (9th Cir.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 1 (1984).

### V.

The final question that must be decided concerns the applicability of the principles and procedures discussed above to the facts of the case before us. The People suggest that the conviction should be affirmed because the record of the voir dire presents sufficient nondiscriminatory reasons for which the prosecutor might have dismissed the three Spanish-surnamed jurors. As an alternative position, the People argue that the case should be remanded to the district court in order to permit the prosecutor to articulate his reasons for dismissing these jurors. The defendant, while conceding that a remand for further hearing would be acceptable, urges that a new trial is the most appropriate remedy.

We acknowledge the recognition in *Wheeler*, 148 Cal.Rptr. at 906, 583 P.2d at 764, that trial judges are in the best position to evaluate a prosecutor's explanation of reasons for exercising peremptory challenges because of their knowledge of local prosecutors and conditions as well as "their powers of observation, their understanding of trial techniques, and their broad judicial experience;" we believe, however, that the record here is sufficient for us to determine that the defendant failed to establish a prima facie case of unconstitutional discrimination in the use of peremptory challenges. *See United States v. Andrade*, 788 F.2d 521, 524–525 (8th Cir.1986), *cert. denied* —— U.S. ——, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986). The persons excluded from the jury are Spanish-surnamed and thus members of a cognizable group, but our review of the voir dire convinces us that the circumstances do not support the defendant's argument that there is a strong likelihood that the jurors were excused solely because of their membership in the group.

In this case, the district court asked preliminary questions of the prospective jurors and then both the People and defense counsel asked numerous questions. In response to these questions, prospective juror Barela, against whom the People exercised their second peremptory challenge, stated that he had a friend who recently had been charged with murder. Although the case had been resolved, Barela had known his friend for many years and found it difficult to think his friend could have committed a murder. The People exercised their fourth peremptory challenge against prospective juror Abeyta. Abeyta was employed as a high school counselor at Abraham Lincoln High School. The People exercised their sixth peremptory challenge against prospective juror Gutierrez, who in response to the prosecutor's question, "Have you formed an opinion about the defendant's guilt?" responded, "No," but that he had been in situations where he had almost been fired from his job and felt very badly about it. He stated, "I felt like killing somebody you know." In response to another question, he indicated that he empathized with the defendant and that when "someone hurts your feelings, you feel like defending yourself ... because you should have a little respect, too." He also stated that when someone gets mad, "you can do anything ... five minutes later you'll be sorry."

When the defendant's counsel moved for a mistrial on the basis of the People's exercise of peremptory challenges against Spanish-surnamed prospective jurors, the court responded that the defendant had removed one of the Spanish-surnamed jurors, prospective juror Pacheco. The defendant's counsel responded that he had challenged Pacheco because at age forty-five Pacheco claimed never to have heard or seen any racial discrimination or have been in a fight and to not recall ever being in an argument. In a self-defense case, according to defense counsel, that sort of juror was unacceptable.

The voir dire indicates that there undoubtedly were valid reasons for the prosecution to strike at least two of the Spanish-surnamed prospective jurors.[20] The prosecution actively questioned the prospective jurors who subsequently were challenged. Because the defendant in order to make a prima facie case must establish that there is a strong likelihood that the prospective jurors were excused solely because of their membership in the cognizable group, and because we can discern reasons for the prosecution's use of at least two of the three peremptory challenges from the record, reasons that are unrelated to membership in the group, we do not believe it necessary to order a new trial or to remand the case to the district court for a hearing that would allow the prosecution to articulate his reasons for dismissing these jurors.[21] Therefore, we affirm the judgment of the court of appeals that the defendant's conviction be upheld, but we reject the court's reliance on *Swain.*

Judgment affirmed.

LOHR, J., specially concurs.

VOLLACK, J., specially concurs in the result only, and ERICKSON, J., joins in the special concurrence.

LOHR, Justice, specially concurring.

I agree with the result reached by the majority. As detailed in part V of the majority opinion, the record does not support a contention that the prosecution peremptorily challenged Spanish-surnamed venirepersons for discriminatory reasons. Under these circumstances, it is unnecessary to address the difficult constitutional issues discussed in detail in the majority opinion, and I think it inadvisable to do so. *See People v. Fields,* 697 P.2d 749, 761 (Colo.App.1984) (Kelly, J., specially concurring).

VOLLACK, Justice, specially concurring in the result only:

I agree with the majority's decision to affirm the judgment of the court of appeals, upholding the defendant's conviction of first degree murder and attempted first degree murder. I write separately, however, because I believe it is unnecessary for us, given the facts of this case, to adopt the *Wheeler* approach and hold that the discriminatory use of peremptory challenges by a prosecutor violates the sixth amendment to the federal constitution and article II, section 16, of the Colorado Constitution. In light of the ultimate holding of the majority, namely, that the defendant could not establish a prima facie case under either the sixth amendment right to an impartial jury, or the equal protection clause of the fourteenth amendment, it is unnecessary to adopt an approach which leaves issues unresolved and contains open-ended interpretations of key principles.

I.

The unpopularity of the *Swain* case prompted a few state courts to interpret the sixth amendment and their state constitutional provisions on the right to an impartial jury as preventing the discriminatory use of peremptory challenges. *E.g., People v. Wheeler,* 22 Cal.3d 258, 583 P.2d 748, 148 Cal.Rptr. 890 (1978); *Commonwealth v. Soares,* 377 Mass. 461, 387 N.E.2d 499, *cert. denied,* 444 U.S. 881, 100 S.Ct. 170, 62

---

20. We need not determine whether there were valid reasons to exercise a peremptory challenge against juror Abeyta because the forbidden use of peremptory challenges in a discriminatory and systematic fashion in a single case presupposes that the prosecutor peremptorily struck more than one member of a cognizable group. *See Booker v. Jabe,* 775 F.2d at 771–772; *but cf. Saadiq v. State,* 387 N.W.2d 315, 329 (Iowa 1986) (where prosecutor peremptorily struck only black juror on panel, case remanded for trial court to make record under *Batson* on denial of equal protection claim).

21. Since *Batson,* a number of state appellate courts have determined that the record supplies sufficient neutral reasons to sustain a prosecutor's use of peremptory challenges. *Branch v. State,* — So.2d — 6 Div. 93 (Ala.Ct. of Crim. App., Nov. 12, 1986); *People v. Moss,* 188 Cal. App.3d 268, 233 Cal.Rptr. 153 (1986); *Kibler v. State,* 501 So.2d 76 (Fla.Dist.Ct.App., 1987); *Johnson v. State,* 731 P.2d 993 (Okla.Crim.App., 1987); *Chambers v. State,* 724 S.W.2d 440 (Tex. Ct.App., 1987).

L.Ed.2d 110 (1979). However, the majority of courts have rejected this interpretation. *E.g.*, *United States v. Clark*, 737 F.2d 679 (7th Cir.1984); *Willis v. Zant*, 720 F.2d 1212 (11th Cir.1983), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3546, 3548, 82 L.Ed.2d 849, 851 (1984); *United States v. Whitfield*, 715 F.2d 145 (4th Cir.1983); *United States v. Childress*, 715 F.2d 1313 (8th Cir.1983), *cert. denied*, 464 U.S. 1063, 104 S.Ct. 744, 79 L.Ed.2d 202 (1984); *Weathersby v. Morris*, 708 F.2d 1493 (9th Cir.1983), *cert. denied*, 464 U.S. 1046, 104 S.Ct. 719, 79 L.Ed.2d 181 (1984); *State v. Wiley*, 144 Ariz. 525, 698 P.2d 1244 (1985); *State v. Stewart*, 225 Kan. 410, 591 P.2d 166 (1979); *State v. Sims*, 639 S.W.2d 105 (Mo.App. 1982); *Nevius v. State*, 101 Nev. 238, 699 P.2d 1053 (1985); *Commonwealth v. Henderson*, 497 Pa. 23, 438 A.2d 951 (1981); *State v. Ucero*, 450 A.2d 809 (R.I. 1982); *State v. Grady*, 93 Wis.2d 1, 286 N.W.2d 607 (1979). The California Supreme Court, in *People v. Wheeler*, was reacting to what it viewed as an almost impossible burden of proof under *Swain*'s interpretation of the equal protection clause, which required a defendant to show that the prosecutor systematically used peremptory challenges against a racial group over an extended period of time. With the advent of *Batson v. Kentucky*, — U.S. —, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), which overrules *Swain*, such an impossible burden no longer exists.

I believe the *Wheeler* analysis adopted by the majority rests on a faulty premise that equates impartiality with representativeness. If a jury must be cross-sectional, i.e., representative, to be impartial, then it must be cross-sectional in every case. However, virtually all the courts that follow *Wheeler* subscribe to the proposition that there is

> no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975) (citation omitted). *Wheeler* and its progeny subscribe to the notion that impartiality is achieved through the mixing of a variety of views on the jury itself, and that the way to achieve impartiality is through the representation of that variety on a petit jury so that views associated with group membership can mix and, if antagonistic, cancel each other out. *Wheeler*, 22 Cal.3d at 266–67, 583 P.2d at 754–55, 148 Cal.Rptr. at 896; *Soares*, 377 Mass. at 480–83, 387 N.E.2d at 512–13. This premise, that particular groups have particular views and thus must be represented on a jury for that jury to be impartial, continues the stereotypical thinking that *Wheeler* seeks to eliminate, i.e., the conception of group bias. If members of groups think in a particular way, then it would be the obligation of both the prosecution and the defense to remove groups unfavorable to their side.

I disagree with the majority's statement that the ideal impartial jury is one where its members are different from each other and individually indifferent. Maj. op. at 1153 n. 24.) Ideally, group membership should not be a consideration for the making of an impartial jury.

The sixth amendment analysis as adopted by the majority is a double-edged sword for the defendant. Although the sixth amendment affords protection only to the defendant, there is nothing in its language or its history to suggest that the state may not protect itself from jurors who are partial to the defense. S. Saltzburg & M. Powers, *Peremptory Challenges and The Clash Between Impartiality and Group Representation*, 41 Md.L. Rev. 337, 354 (1982). The *Wheeler* approach, based on the California Constitution, recognizes the ability to challenge the use of peremptories on the part of the prosecution as well as the defense. 22 Cal.3d at 281 n. 28, 583 P.2d at 765 n. 28, 148 Cal.Rptr. at 906 n. 28. "The state, no less than a defendant, is entitled to an

impartial jury." *State v. Neil,* 457 So.2d 481, 487 (Fla.1984).

Thus, according to the unique provisions of the California Constitution as interpreted in *Wheeler,* either side can violate the fair cross-section requirement. This could prove very problematic for the defense, for whom the right to peremptory challenges is of great importance because they are so personally involved in the result of the trial and, therefore, are usually given more peremptory challenges than is the government. *United States v. Newman,* 549 F.2d 240, 250 n. 8 (2d Cir.1977).[1] I cannot endorse the adoption of an analysis which requires proportional representation on juries because it would carry the divisive implication that without such a system of proportional representation, juries would be unable to be impartial. *See Ristaino v. Ross,* 424 U.S. 589, 596 n. 8, 96 S.Ct. 1017, 1021 n. 8, 47 L.Ed.2d 258 (1976); Note, *The Defendant's Right to Object to Prosecutorial Misuse of the Peremptory Challenge,* 92 Harv.L.Rev. 1770, 1777 n. 53 (1979). This would conflict with the long established principle that a petit jury need not mirror the community to be considered impartial. *Taylor,* 419 U.S. at 538, 95 S.Ct. at 702.

## II.

My primary concern with the majority's sixth amendment analysis is the definition of "cognizable groups" or "distinctive groups," which, under the sixth amendment, are those groups that "are sufficiently numerous and distinct" so that if they are systematically excluded from the jury venires, "the sixth amendment fair cross-section requirement cannot be satisfied." *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979) (quoting *Taylor,* 419 U.S. at 531, 95 S.Ct. at 698). I do not object to the majority's holding that spanish-surnamed persons are a cognizable group. (Maj. op. at 1153). However, I do object to the phrasing used by the majority in defining "cognizable group:" "[W]e believe that a group is le-

gally cognizable if it is defined on the basis of race, national origin, religion or sex." (Maj. op. at 1153–1154 n. 15.) The use of the words "we believe," coupled with their location in a footnote, fails to provide sufficient guidance for compliance with this opinion and leaves "cognizable group" subject to interpretation.

In *State v. Gilmore,* 103 N.J. 508, 511 A.2d 1150 (1986), cited by the majority, the New Jersey Supreme Court stated that *"at minimum,* cognizable groups include those defined on the basis of religious principles, race, color, ancestry, national origin, and sex." 511 A.2d at 1159 n. 3 (emphasis added). As the majority here, the *Gilmore* court found it unnecessary to determine the scope of "cognizable group" definitively.

Because I believe that the majority's definition of "cognizable group" is vague and because the facts of this case clearly do not require it, I would not adopt the majority's sixth amendment analysis and embracement of *Wheeler.*

I am authorized to state that ERICKSON, J., joins in this special concurrence.

---

**1.** The majority contends that this issue need not be resolved in this case (maj. op. at 1156 n. 19). In light of the majority's adoption of *Wheeler,* I

cannot agree; the effect of this approach on the defendant's use of peremptory challenges must be considered.