The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Abron ARRINGTON, Defendant–Appellant.

No. 90CA1875.

Colorado Court of Appeals, Div. II.

June 4, 1992.

Rehearing Denied July 30, 1992.

Certiorari Denied Jan. 11, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Linda C. Michow, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge TURSI.

Defendant, Abron Arrington, appeals the judgment entered upon jury verdicts finding him guilty of first degree felony murder, aggravated robbery, second degree burglary, and three counts of crime of violence. We reverse and remand the cause for a new trial.

The offenses with which defendant was charged and tried arose out of an incident which was precipitated by a racial slur made during an argument between a woman, her sister, and her ex-roommates. The roommates became angry and related the slur to their friends.

In retaliation, four men, including defendant, drove to the woman's home. Once there, three of the men forcibly entered through a partially opened door. Defendant was identified as one of the intruders, but he was not armed.

The woman was entertaining her sister and her sister's boyfriend at the time. During the commotion, the boyfriend sustained mortal gunshot wounds. One of the men stole money and another stole a VCR before fleeing.

At trial, defendant denied that he had participated in the crimes and relied upon misidentification as his defense.

## I.

Defendant, who is black, contends that the prosecution committed reversible error when it used a peremptory challenge to strike the only remaining black person from the venire panel. He argues that this challenge was racially motivated and, thus, violates his state and federal constitutional rights to equal protection of the law. We agree.

Two black men were seated on the venire panel. During voir dire, one was excused for cause.

During his examination, the remaining black venireman stated that he was a plaintiff in an employment discrimination suit in which he alleged a denial of promotion based on race. He was questioned specifically whether his involvement in the lawsuit would affect his ability to be fair and impartial in a criminal lawsuit, whether his race "would be a problem" as a juror, and about his understanding of a black man's feelings when charged with a crime in this country.

He responded that he could act fairly as a juror, that his race and involvement in the lawsuit would not affect his impartiality, and that everyone, regardless of race, is "given a fair shake" in the criminal justice system. His other remarks demonstrate his intention to carry out fairly his duties as a juror.

Subsequently, the prosecution used a peremptory challenge "to excuse Mr. Johnson next, the black man" on the basis of his participation in the race discrimination suit. The prosecutor then stated:

There are going to be some statements made in this case about black people as 'niggers' which he might take offense at and additionally, [defendant's] father at one time, at least, accused police officers for having racial motivations for arresting Mr. Arrington.

After the prosecutor proffered her reasons for the challenge, defendant objected to the use of the peremptory challenge as an impermissible challenge on the basis of race. The trial court denied the objection, holding that the prosecution's use of a peremptory challenge to strike a single juror of defendant's race was insufficient to establish a *prima facie* pattern of discrimination.

In *Fields v. People*, 732 P.2d 1145 (Colo. 1987), our supreme court adopted the prin-

ciple espoused in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), that a defendant may establish a *prima facie* case of purposeful discrimination in selection of the jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. The *Fields* situation concerned a prosecutor's use of purposeful, systematic, and discriminatory peremptory challenges to exclude from the jury panel members of a racially cognizable group *different* than defendant's own group.

Here, defendant and the stricken juror are members of the same racial group; therefore, we employ the *Batson* standard to determine whether defendant established a *prima facie* pattern of discrimination.

Under *Batson,* a defendant may establish a *prima facie* case of purposeful discrimination solely by showing that defendant is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire.

If the trial court determines that the defendant has made a *prima facie* case of purposeful discrimination, then the prosecution bears the burden of rebutting the inference by articulating a race neutral reason for the challenge which is related to the particular case to be tried. While such a reason "need not rise to the level justifying exercise of a challenge for cause," it must rise above "the assumption—or his intuitive judgment—that [the juror] would be partial to the defendant because of their shared race." *Batson v. Kentucky, supra.*

Courts in other jurisdictions have relied upon *Batson* to hold that the use of a peremptory challenge to strike the only prospective juror of defendant's race may be sufficient to establish a *prima facie* case of impermissible discrimination. *See, e.g., U.S. v. Chalan,* 812 F.2d 1302 (10th Cir.1987).

■ However, we need not decide here whether the prosecutor's preemptory challenge of the one black juror adequately established a *prima facie* case of purpose-

ful discrimination. Since the prosecutor offered her explanation for the peremptory challenge before the defendant was given the opportunity to make out his *prima facie* case, the defendant's burden of proving a *prima facie* case is moot, and we must consider whether the prosecutor espoused a sufficient race-neutral rationale for striking the juror. *See Hernandez v. New York,* —— U.S. ——, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *U.S. v. Forbes,* 816 F.2d 1006 (5th Cir.1987).

In our view, the prosecutor's reasoning for exercising the peremptory challenge is founded upon impermissible race-specific reasons.

Here, the juror did not exhibit any tendency or propensity toward partiality when responding to extensive questioning about his race and race discrimination lawsuit. Further, neither of the reasons offered by the prosecutor are predicated upon objective factors which, for instance, would indicate his bias or unwillingness to follow the law, or which are grounded upon factors of a non-racial nature. *See Hernandez v. New York, supra.* Rather, both reasons upon which the challenge was predicated were based strictly upon the prosecutor's subjective belief that defendant's race would cause him not to be impartial in a case against a black defendant.

Under these circumstances, we conclude that defendant satisfied his burden of proving the prosecution's impermissible use of a peremptory challenge to violate defendant's constitutional rights to trial by an impartial jury. Therefore, defendant is entitled to a new trial.

## II.

■ Among several of defendant's contentions of error that may arise on retrial is his objection to a witness stating that she had described defendant as being "all cripped out" to the police on the night of the incident.

Based upon our disposition of this case, we need not address whether this statement was prejudicial error in that it implied defendant's affiliation with a street gang.

However, the prejudicial nature of the remark, when measured by its probable affect upon the jury, is significant. *See People v. District Court,* 785 P.2d 141 (Colo. 1990); *People v. Ojeda,* 745 P.2d 274 (Colo. App.1987). Therefore, we disapprove of the prosecutor's solicitation of this testimony, which appears to have been asked for the sole purpose of injecting an irrelevant and probably prejudicial matter before the jury.

### III.

■ Defendant next contends that the trial court committed reversible error when it refused to admit evidence that defendant was not involved with previous criminal and violent activities which occurred at the house where the crimes at issue occurred. We are not persuaded.

■ A defendant is entitled to present a complete defense and, therefore, to the admission of reverse similar transactions, if it is relevant to create a doubt as to his guilt. Therefore, evidence from which jurors can infer misidentification should be admitted if all of the similar facts and circumstances, taken together, may support a finding that the same person was probably involved in both transactions. *People v. Bueno,* 626 P.2d 1167 (Colo.App.1981).

The admissibility of such evidence is within the trial court's discretion and must be decided on a case-by-case basis. *People v. Flowers,* 644 P.2d 916 (Colo.1982), *cert. dismissed,* 459 U.S. 803, 103 S.Ct. 25, 74 L.Ed.2d 41 (1982).

Here, although the identity of defendant was at issue, the trial court correctly concluded that the prior transactions which defendant sought to introduce for defensive purposes were significantly dissimilar to the crime with which he was charged and were, therefore, irrelevant. *See People v. Schwartz,* 678 P.2d 1000 (Colo.1984); *People v. Pack,* 797 P.2d 774 (Colo.App. 1990).

### IV.

■ Defendant also urges that the trial court erred by limiting defense counsel's cross-examination of the pathologist who performed the autopsy upon the victim about the presence of cocaine in the victim's blood. We disagree.

Defendant cross-examined the pathologist about his blood test results, which established that the victim had either ingested a small amount of cocaine half an hour before the shooting or a large amount some time earlier. He wished to elicit testimony regarding the time frame of the drug's ingestion in part to raise the inference and argue that, if the victim used the cocaine at the crime scene, then the woman who lived there and her sister probably used it too, thereby affecting their ability to identify defendant.

However, there was no reasonable factual basis here to substantiate defendant's inference that the witnesses may have ingested cocaine. Under these circumstances, cross-examination regarding the time-frame of decedent's cocaine use would have permitted the jury to infer the witness's cocaine use based upon mere conjecture, which is impermissible. *See People v. Simbolo,* 188 Colo. 49, 532 P.2d 962 (1975).

Therefore, the trial court properly limited the scope of cross-examination to issues relevant and material to trial. *See People v. Harris,* 762 P.2d 651 (Colo.1988).

### V.

■ Defendant also contends that the trial court committed error when it instructed the jury on complicity, depriving him of due process of law. We disagree.

At trial, the jury was instructed, over defendant's objection, that: "The defendant must have had knowledge that the other person intended to commit all or part of the crime." Defendant argues that the prosecution was allowed to convict him under a relaxed standard of proof since the jury should have been instructed to find that defendant knew that the principal was engaging in, or was about to engage in, the prohibited conduct. We disagree.

■ Under the complicitor statute, an offender must know when he encourages the illegal act that the other person intends

to commit the crime. *People v. Thompson,* 655 P.2d 416 (Colo.1982); *People v. Corpening,* 837 P.2d 249 (Colo.App.1992). Pursuant to this standard, defendant is held liable only for those acts which he intended to assist. *See People v. Thompson, supra.*

Had defendant's instruction been accepted, the jury could have judged defendant by a more severe standard and found him "fully liable for the principal's more serious criminal conduct even if the complicitor did not contemplate, assist or aid the more serious conduct." *People v. Wheeler,* 772 P.2d 101 (Colo.1989) (Erickson, J., dissenting). Under these circumstances, error, if any, inured to defendant's benefit, rendering it harmless. *See People v. O'Neill,* 803 P.2d 164 (Colo.1990); *People v. Simien,* 671 P.2d 1021 (Colo.App.1983).

■ We also perceive no error in the fact that the jury was instructed that the principal must have committed all or part of the crime. This instruction, which was also submitted by defendant, correctly tracks the language of the statute and pattern jury instruction. *See People v. Wilson,* 791 P.2d 1247 (Colo.App.1990). Furthermore, there was no dispute at trial that the principal had, in fact, committed the charged crimes.

### VI.

■ Pursuant to the doctrine of merger, *see Boulies v. People,* 770 P.2d 1274 (Colo.1989) and *People v. Henderson,* 810 P.2d 1058 (Colo.1991), the People concede that defendant cannot be convicted of burglary if he is also convicted of felony murder. We disagree.

Therefore, if, upon retrial, defendant is convicted of felony murder by having committed multiple underlying predicate offenses, that offense which serves as the primary predicate should merge into the felony murder charge, and the judgments of conviction for the remaining offenses should exist independently of the felony murder conviction. *See Callis v. People,* 692 P.2d 1045 (Colo.1984).

The judgment is reversed, and the cause is remanded for a new trial consistent with the opinions expressed herein.

SMITH and PLANK, JJ., concur.